IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, | * |
| v. | * Crim. No. RDB-19-0438 |
| JAMIE CLEMONS, | * |
| Defendant. | * |

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

Before this Court is Defendant Jamie Clemons' Motion to Dismiss Because of Denial of a Fair and Speedy Trial (ECF No. 72). The Defendant has been charged with Malicious Destruction of Real Property by Fire, in violation of 18 U.S.C. §§ 844(i), 2, and Possession of an Unregistered Firearm/Destructive Device, in violation of 26 U.S.C. §§ 5842, 5861(d), 5871. (Superseding Indict., ECF No. 28.) The Defendant asks this Court to dismiss the indictment and charges contained therein due to the delays in his trial caused by the global pandemic and the precautions this Court must take in order to safely conduct a trial in these unprecedented times. The Defendant argues that he has been denied his right to a speedy trial and that the altered courtroom and courtroom procedures deny him his right to a fair trial. For the reasons set forth at the Pretrial Motions Hearing on November 3, 2020, and the reasons set forth below, this Court DENIES the Defendant's Motion to Dismiss (ECF No. 72).

**A. Speedy Trial**

The Defendant claims that he has been denied his right to a speedy trial. There is no basis for this claim. The Defendant made his initial appearance on the charges contained in the Indictment on September 12, 2019. (ECF No. 5.) A scheduling conference was conducted on October 31, 2019, and a jury trial was set to commence on April 6, 2020. (ECF No. 15.) Following the conference, the Government moved to toll the speedy trial from September 12, 2019 through the conclusion of the trial in April 2020. (ECF No. 16.) On March 11, 2020, the Defendant retained a second attorney, and a conference call with the Court was conducted. At the Defendant's own request, the trial was continued from April 6, 2020, to July 13, 2020. (ECF No. 37.) This Court granted the jointly requested Order, tolling the speedy trial act through the conclusion of the trial in July 2020. (ECF No. 40.)

On June 4, 2020, the Government moved to toll the speedy trial clock and continue the trial due to the COVID-19 global pandemic. (ECF No. 64, 64-1.) The Defendant did object to this delay, however, this Court granted the Government's motion and tolled the speedy trial clock from September 11, 2019 through November 30, 2020. (ECF No. 65.) As this Court's order explains, Chief Judge Bredar of this Court issued Standing Order 2020-11, which suspended jury trials through July 31, 2020 due to the conditions presented by the COVID-19 pandemic. *See* Standing Order No. 2020-11, *In re Standing Orders*, Misc. No. 00-308 (May 22, 2020). This Standing Order provided that the time period for continuance implemented by the Order would be excluded under the Speedy Trial Act, based on the Chief Judge's finding that the ends of justice served by ordering the continuance outweighed the best interest of the public and any defendant's right to a speedy trial. (ECF No. 65.)

The Defendant's objection to the delay in hearing his trial raises no new issues. The Defendant has not been denied his right to a speedy trial.

### B. Fair Trial

The Defendant claims that the altered courtroom and courtroom procedures deny him his right to a fair trial. (ECF No. 72.) First, the Defendant argues that his counsel will not be able to properly examine and cross-examine witnesses, he cannot confront witnesses face to face, and his counsel will be unable to effectively converse with their client due to the alterations in the courtroom and the requirement that all courtroom participants wear masks during the proceedings. (*Id.*) Second, the Defendant argues that the alterations to the courtroom are a constant reminder of medical dangers, which are presented not only to counsel, the defendant and court personnel, but also to jurors, who will be tasked with considering and evaluating witness testimony and evidence. (*Id.*) The Defendant claims that these concerns will prevents the jurors from giving their full attention and consideration to the witness testimony and evidence, as well as prevent the parties from operating at their full capacity. (*Id.*) For the following reasons, the Defendant's concerns are without merit.

The Court is responsible for the safety of everyone in the courtroom, just as the Chief Judge is responsible for ensuring the well-being all individuals in courthouse. With the health and safety of the public in mind, the Chief Judge issued Standing Order 2020-10, requiring all persons seeking entry to the United States Courthouse in Baltimore must wear a face covering or mask. *See* Third Amended Standing Order No. 2020-10, *In re Use of Face Coverings and Masks*, Misc. No. 00-308 (Sept. 4, 2020). In doing so, he followed guidance from the Centers for Disease Control and Prevention ("CDC") and other public health

3

authorities that the use of face coverings and masks in public settings reduces the spread of COVID-19.  CDC guidelines make clear that everyone should wear a mask in public while keeping at least six feet away from others in order to curb the spread of COVID-19.  *See* CDC, *Coronavirus Disease 2019 (COVID-19)—How to Protect Yourself & Others* (2020), https://www.cdc.gov/mmwr/volumes/69/wr/mm6940e3.htm.

Wearing masks mitigates for all trial participants the risk of transmission of a potentially deadly or disabling virus, while leaving the Defendant's ability to examine witnesses and confront his accusers intact.  A defendant's right to confront witnesses under the Sixth Amendment's Confrontation Clause may be satisfied without traditional face-to-face confrontation at trial where (1) "denial of such confrontation is necessary to further an important public policy, and (2) "the reliability of the testimony is otherwise assured." *Maryland v. Craig*, 497 U.S. 836, 850 (1990) (citations omitted).  The first prong of the test provided of *Craig* is clearly satisfied.  The mask requirement, which denies the Defendant the ability to observe a witness' nose and mouth movement during confrontation, "is necessary to further an important public policy: ensuring the safety of everyone in the courtroom in the midst of a unique global pandemic." *United States v. Crittenden*, No. 4:20-CR-7(CDL), 2020 WL 491773, at *6 (M.D. Ga. Aug. 21, 2020).  Whether testimony is considered reliable under the second prong of the test requires the analysis of the four elements of confrontation: physical presence of the witness, testimony under oath, cross-examination, and observation of demeanor by the trier of fact. *Craig*, 497 U.S. at 846.  In the case of a witness testifying wearing a mask, the first three elements are clearly present.  The witness will be physically present in the courtroom, will testify under oath, and may be cross-examined.  "The only element that the mask protocol might

interfere with is the fourth: observation of demeanor." *United States v. James*, No. PCT-DLR-19-08019, 2020 WL 6081501, at *2 (D. Ariz. Oct. 15, 2020).

Following the courts in *James*, 2020 WL 6081501, and *Crittenden*, 2020 WL 491773, this Court concludes that the mask requirement does not significantly obstruct the ability to observe demeanor. A mask will obfuscate two witness traits: movement of the nose and mouth, but as the *Crittenden* court held and the *James* court followed, being able to see a witness's nose and mouth is not essential to testing the reliability of testimony. *James*, 2020 WL 6081501, at * 2 (citing *Crittenden*, 2020 WL 491773, at *7). The *Crittenden* court explained:

> Demeanor includes the language of the entire body [and] jurors will still be able to observe most facts of the witnesses' demeanor. They can observe the witness from head to toe. They will be able to see how the witnesses move when they answer a question; how the witnesses hesitate; how fast the witnesses speak. They will be able to see the witnesses blink or roll their eyes, make furtive glances, and tilt their heads. The Confrontation Clause does not guarantee the right to see the witness's lips move or nose sniff, any more than it requires the jurors to subject the back of a witness's neck to a magnifying glass to see if the hair raised during particularly probative questioning.

*Crittenden*, 2020 WL 4917733, at *7. "Because the covering of the nose and mouth does not significantly hinder observation of demeanor, allowing witnesses to testify while wearing masks does not materially diminish the reliability of the witnesses' testimony." *James*, 2020 WL 6081501, at *2. The mask requirement does not violate the Defendant's rights under the Sixth Amendment, nor prevents Counsel from effectively examining witnesses. For the same reasons, the masks will not prevent the Defendant's Counsel from conversing with him throughout the trial.

With respect to the Defendant's argument that due to the threat of the virus jurors will not be able to give their full attention to the trial and their tasks as jurors, this Court finds that the procedures set by Chief Judge Bredar will adequately protect against such concerns.  In Standing Order 2020-19, the Chief Judge implemented certain modifications to its juror selection and summonsing process in order to minimize the unusual danger, hardship, and inconvenience posed by the COVID-19 pandemic.  *See* Standing Order 2020-19, *In re Modifications to Jury Summons Procedures*, Misc. No. 00-308 (Oct. 22, 2020).  The Court's official website now displays a video message from the Chief Judge regarding juror safety, summarizing the precautions the Court has taken to minimize the risks posed by the pandemic to prospective jurors and affirming the importance of jury service.  *See A Message from Chief Judge James K. Bredar Regarding Juror Safety* (Aug. 18, 2020), https://www.mdd.uscourts.gov/news/juror-safety.  The Standing Order provides that in addition to summons materials, which the Clerk typically issues, the summons packet delivered to prospective jurors will include a link to this message, as well as a Juror Questionnaire.  *See* Standing Order 2020-19.  Pursuant to the Clerk's discretionary authority under Section XVI of the Jury Selection Plan, the Clerk shall grant a deferral of service to any prospective juror who demonstrates that service would cause undue hardship or extreme inconvenience, as well as to those who request a onetime deferral of service and report in the Juror Questionnaire that (1) he or she has an underlying medical condition or circumstances that puts him or her at higher risk of developing serious health complications from COVID-19, or (2) lives or provides direct care to a person meeting such description.  *Id.*  The Clerk's Office shall, prior to the commencement of service, contact prospective

jurors who are granted a deferral to inquire regarding their health status and any potential COVID-19 exposure.  *Id.*  If the Clerk determines that a prospective juror has been exposed to COVID-19, rendering their service unsafe and likely to disrupt proceedings, the Clerk shall temporarily excuse the prospective juror from service.  *Id.*  The Clerk's Office is also permitted to conduct additional in-person screening for symptoms of COVID-19 on the day the prospective jurors' service commences.  *Id.*

The procedures put in place by the Chief Judge will ensure that the jurors seated will be well-informed of the safety precautions put in place by the Court; those individuals with the most significant concerns related to the virus are not among the prospective jurors; and the jurors in the courtroom do not present a serious threat to the health and safety of all present at the proceedings.  These measures will prevent jurors from being distracted from their duties and should also provide comfort to the Parties that they too are being adequately protected by the Court's procedures.  Counsel, as always, will monitor jury behavior throughout the duration of the trial, and any concerns regarding juror behavior or attention must be brought to this Court's attention.  Additionally, during the course of the trial, the Court will give customary instructions to the jurors to address attentiveness.  The Defendant's concerns regarding juror attention are adequately addressed by these precautions and procedures.

## CONCLUSION

The COVID-19 pandemic presents many challenges for conducting a jury trial that protects the Constitutional rights of a defendant and the health and safety of trial participants and spectators.  To accommodate the Defendant's right to a speedy trial, while also protecting those who will be present for the trial, the Court has modified traditional trial protocols consistent with the professional scientific guidance from the CDC.  For the reasons explained in

today's order, the Court has concluded that these modifications do not infringe upon the Defendant's constitutional right to a speedy and fair trial. According, the Defendant's Motion to Dismiss Because of Denial of a Fair and Speedy Trial (ECF No. 72) is DENIED.

A separate Order follows.

Dated: November 4, 2020                     _____/s/_____
                                            Richard D. Bennett
                                            United States District Judge