IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| v. | * | Crim. No. RDB-19-0438 |
| | * | |
| JAMIE CLEMONS, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Before this Court is Defendant Jamie Clemons' Motion to Dismiss for Defective Charge (ECF No. 58). The Defendant challenges the second of two counts alleged in the Superseding Indictment. (ECF No. 28). Count 1 alleged Malicious Destruction of Real Property by Fire, in violation of 18 U.S.C. §§ 844(i), 2. (*Id.*) Count 2 alleged Possession of an Unregistered Firearm/Destructive Device, in violation of 26 U.S.C. §§ 5842, 5861(d), 5871. (*Id.*) The Defendant moves to dismiss Count 2 arguing that the device`s allegedly used to start the fire at Coconut Charlie's on July 28, 2017 do not qualify as Destructive Devices as defined by 26 U.S.C. § 5345. (ECF No. 58.) For the reasons provided on the record at the Motions Hearing on November 3, 2020, and the reasons set forth below, this Court DENIES the Defendant's Motion to Dismiss for Defective Charge (ECF No. 58).

### Background

On July 28, 2017, just before 3:00 a.m., an Anne Arundel County 911 operator received a call reporting a fire at the bar and restaurant called Coconut Charlie's, located at 9129 Fort Smallwood Road in Pasedena, Maryland. (ECF No. 56 at 1.) Due to the size of

1

the fire, several agencies and approximately seventy firefighters responded in an attempt to control and extinguish the fire. (*Id.*) The building was completely destroyed by the fire. (*Id.* at 2.) What remained was razed and cleared from the property. (*Id.*)

A fire scene examination was conducted, and it was determined that the fire was incendiary—it was intentionally ignited under circumstances in which there should not have been a fire. (*Id.* at 2-3.) The examination revealed that the origin of the fire was at the west exterior of the restaurant. (*Id.* at 2.) Exterior camera footage from the video recording system, which remained operational after the fire, captured the initial fire event. (*Id.*) The footage shows multiple flashes of light, followed by a sustained fire on the west exterior side of the structure. (*Id.*) The remains of fourteen incendiary devices consisting of gasoline-filled plastic cups with wicks were found on the roof and exterior grounds of the building. (*Id.* at 3.) The wicks were set on fire and then devices were then thrown on to the roof and exterior patio of the building. (*Id.*) The examiners also found one pink gardening glove on the west exterior of the property fence line, the same side as the origin of the fire, which tested positive for the presence of gasoline. (*Id.*)

## Analysis

Federal law makes it unlawful to possess an unregistered "firearm," defined in 26 U.S.C. § 5845(a) as including "a destructive device." *U.S. v. Simmons*, 83 F.3d 686 (4th Cir. 1996). "Destructive device" in turn is defined in relevant part as:

> (1) any explosive, incendiary, or poison gas (A) bomb, (B) grenade, (C) rocket having a propellant charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device;
> (2) . . .

2

> (3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) . . . and from which a destructive device may be readily assembled.

26 U.S.C. § 5845.  The Defendant is charged in Count 2 with Possession of an Unregistered Firearm/Destructive Device, in violation of 26 U.S.C. §§ 5842, 5861(d), 5871, due to his alleged possession of the gasoline-filled plastic cups with wicks, which are believed to have started the fire at Coconut Charlie's.  The Defendant argues in his Motion that a gasoline-filled plastic cup with a wick is not a destructive device under the statute's definition, and, therefore, Count 2 is a defective charge.  (ECF No. 58.)  The Defendant's argument that the devices allegedly used to start the fire at Coconut Charlie's do not fall within the statutory definition of destructive device is without merit.

In *Simmons*, the U.S. Court of Appeals for Fourth Circuit followed numerous federal courts which have "uniformly held" that a Molotov cocktail, "defined as a device comprising a bottle, gasoline, and a rag," constitutes a destructive device.  83 F.3d at 687-88 (collecting cases).  As the Fourth Circuit held:

> Every federal court addressing Molotov cocktails under section 5845(f) has appeared to assume, as we now hold, that a Molotov cocktail is a destructive device . . . because a Molotov cocktail is, or at least is a device similar to, an incendiary bomb, or grenade, in that it is a weapon whose design and primary purpose is to cause injury or to destroy property.

*Id.* at 688.  The Defendant attempts to distinguish the gasoline-filled plastic cups from traditional Molotov cocktails: he primarily argues that because the devices in this case were made from plastic cups, rather than glass bottles, they are not devices contemplated by the statute.  (ECF No. 58).  He claims this difference is significant because devices made from

plastic would be unable to detonate or explode as required by the statute. (*Id.*) This argument is not supported by the case law.

The Defendant cites *United States v. Podolsky*, 625 F. Supp. 188 (N.D. Ill. 1985), which was affirmed by the U.S. Court of Appeals for the Seventh Circuit in *United States v. Podolsky*, 798 F.2d 177 (7th Cir. 1986). The district court in *Podolsky* held that the device in question was not a destructive device because "it would ignite and cause a fire but not explode." For this reason, the district court held that the device could not be thought of as an "incendiary bomb" or "similar device" under a traditional definition of the words. *Podolsky*, 625 F. Supp. at 199. However, the *Podolsky* case is contrary to the weight of authority. A device does not need to detonate or shatter, as the Defendant suggests, in order to be considered a destructive device.

In *United States v. La Cock*, 366 F.3d 883, 888 (10th Cir. 2004), the Tenth Circuit rejected *Podolsky*. The court held that "[b]y suggesting that to constitute a 'bomb,'" within the meaning of § 5845 "a device must explode," a court violates "a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *Id.* The Tenth Circuit focused on the word "incendiary" and held that the defendant's device was designed to shoot a flame into the air and was clearly incendiary like other similar devices such as Molotov cocktails. *Id.* Similarly, in *United States v. Graziano*, 616 F. Supp. 2d 350, 361 n.6 (E.D.N.Y. 2008), *aff'd*, 391 F. App'x 965 (2d Cir. 2010), the court offered a broader definition of "explode," holding that "[e]xplodes . . . does not only mean to detonate or shatter, but rather is more broadly defined to include any sudden burst of

energy, including heat or fire." 616 F. Supp. 2d at 360 n.4. The court found that Molotov cocktails and similar devices do "explode" by "delivering a sudden burst of fire and heat from its container upon ignition, flight and impact." *Id.*

Additionally, the fact that the devices in the case at hand were made of plastic rather than glass is immaterial. Generally, courts have taken a broad view in defining destructive devices under the statute. Further, some courts have specifically held that certain devices fashioned from plastic containers are destructive devices. In *Graziano*, the court held that a plastic gas can lit with a rag and thrown through a store window to start a fire was a destructive device, qualifying as an incendiary bomb and finding the device "could be—and, in fact, was—thrown and used as a weapon." *Id.* Additionally, in *United States v. Hedgcorth*, 873 F.2d 1307, 1310 (9th Cir. 1989), the U.S. Court of Appeals for the Ninth Circuit held that plastic water jugs filled with gasoline, motor oil, and soap placed and lit under the victim's car were destructive devices. The fact that the devices in the case at hand were made from plastic containers does not itself render the charge under Count 2 defective.

As the court explained in *Graziano*, "a Molotov cocktail is designed to release gasoline quickly over a large area which vaporizes and burns." 616 F. Supp. 2d at 362. The devices in the case at hand, gasoline-filled plastic cups with wicks, serve the same purpose. The surveillance video further suggests that the devices used on July 28, 2017 achieved this desired result. The footage from that night shows multiple flashes of light, followed by a sustained fire on the west exterior side of burned the structure. (ECF No. 56 at 2.) The fact that the devices allegedly used in the case at hand were constructed from plastic cups, rather than glass bottles, does not mean those devices could not have the same incendiary impact.

For these reasons and those set forth in the record, the Defendant's Motion to Dismiss for Defective Charge (ECF No. 58) is DENIED.

A separate Order follows.

Dated: November 4, 2020                           _____/s/_____
                                                  Richard D. Bennett
                                                  United States District Judge