

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

| | | |
|---|---|---|
| *Judson T. Mihok*<br>*Assistant United States Attorney*<br>*Judson.Mihok@usdoj.gov* | *Suite 400*<br>*36 S. Charles Street*<br>*Baltimore, MD 21201-3119* | *DIRECT: 410-209-4903*<br>*MAIN: 410-209-4800*<br>*FAX: 410-962-0716* |

April 6, 2021

The Honorable Richard D. Bennett
United States District Judge
United States Courthouse
101 West Lombard Street
Baltimore, MD 21201

   Re: <u>United States v. Jamie Clemons</u>, RDB 19 0438

Dear Judge Bennett:

  The Government is able to represent that it will be prepared to dismiss the Superseding Indictment filed in this case (ECF 28) at the sentencing hearing in this matter where the Defendant will be sentenced upon his plea of guilty to the Indictment filed in this case (ECF 1).

  The statutory sentences that apply to Count One of the Indictment (ECF 1), 18 U.S.C. § 844(i), are a mandatory minimum sentence of 5 years and a maximum sentence of 20 years, as well as up to 3 years of supervised release, a $250,000 fine, and a $100 special assessment.[1] There are no remaining counts in that Indictment (ECF 1) to be dismissed in satisfaction at sentencing.

Elements of the Offense

  The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:  That on or about the dates alleged in the Indictment, in the District of Maryland:

  a. The Defendant set fire (or used an explosive) to damage or destroy, or in an attempt to damage or destroy, property;

  b. The property was used in or affecting interstate or foreign commerce;

  c. The Defendant acted maliciously, that is either intentionally or with willful disregard of the likelihood that damage will result, and not mistakenly or carelessly.

---

[1] Count One of the Superseding Indictment carries a 7-year mandatory minimum sentence of incarceration with a 40-year maximum sentence, and up to 5 years of supervised release. Count Two of the Superseding Indictment carries a sentence of up to 10 years of incarceration.

There are a number of other consequences to the Defendant's plea of guilty:

a. <u>Prison</u>:  If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b. <u>Supervised Release</u>:  If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c. <u>Restitution</u>:  The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664. It is anticipated that the restitution in this case will be in excess of **$500,000**.

d. <u>Payment</u>:  If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d).  The Defendant may be required to pay interest if the fine is not paid when due.

e. <u>Collection of Debts</u>:  If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt.  If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law.  Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control.  Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns.  The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

In addition, this Court must be satisfied that the Defendant understands that by entering a plea of guilty, he surrenders certain rights as outlined below:

a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel.  That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed. In fact, the Defendant's jury trial is scheduled to commence April 12th, and the Government remains ready to proceed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community.  Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who

were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.  If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d.  The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e.  If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.  By pleading guilty, the Defendant will be giving up all of these rights. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case.

g.  If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h.  By pleading guilty, the Defendant will also be giving up certain valuable civil rights, including the right to possess a firearm, the right to vote, and the right to various benefits.

In addition, the Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

Advisory Sentencing Guidelines Apply

The Government submits that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998.  The Defendant should understand that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

Below are the Government's preliminary guideline calculations.  Given that there is no plea agreement in this case, there also is no agreement as to the applicable offense levels or criminal history category. The offense levels set forth below are intended only to assist the Court at the Rule 11 proceeding, and do not bind the Government in any way. The Government may argue in favor of a different offense level at sentencing.

The Government has also attached a Statement of Facts, set forth in Attachment A, which is incorporated by reference herein. The Government would be prepared to prove those facts, among others, beyond a reasonable doubt at trial.

Group One: Malicious Destruction of Real Property by Fire

The Base Offense Level for Group One starts at a base offense level is **24**, pursuant to USSG §2K1.4(a)(1).

Pursuant to USSG §2K1.4(b)(1), there is an increase of **2** levels because the offense was committed to conceal another offense.

Therefore, the final offense level for Group One is **26**.

Group Two: Possession of an Unregistered Destructive Device

Group Two involves relevant conduct under USSG §1B1.3, specifically the Possession of an Unregistered Destructive Device. The applicable base offense level is **20**, pursuant to USSG §2K2.1(a)(4)(B).

Since the offense involved possession of a destructive device, there is an increase of **2** levels pursuant to USSG §2K2.1(b)(3)(B).

Since the possession was in connection with another felony offense, there is an increase of **4** levels pursuant to USSG §2K2.1(b)(6)(B).

Therefore, the final offense level for Group Two is **26**.

Relevant Conduct USSG §3D1.4

Under USSG §3D1.4, the offense conduct does not group. The highest base offense level is 26. One level is added to that offense level, and since the offense conduct for Group Two is

equally serious, an additional level accrues. Therefore, 2 levels are added to base offense level 26, so the adjusted offense level is **28**. USSG §3D1.4(a)

Acceptance of Responsibility: The U.S. Attorney's Office will not oppose a **2** level reduction in the Defendant's adjusted offense level pursuant to USSG §3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. However, this Office will not be moving for a third level for acceptance under USSG §3E1.1(b), and as the Application Notes make plain, "Because the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial, an adjustment under subsection (b) *may only be granted upon a formal motion by the Government at the time of sentencing*." USSG §3E1.1, comment. (n.6)(emphasis added). Again, the trial is less than one week away, the Government is fully prepared to proceed, and has already expended considerable resources to prepare for trial.

This Office may oppose any adjustment for acceptance of responsibility under USSG §3E1.1(a) if the Defendant: (i) fails to admit facts necessary to support his guilty plea; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of his guilty plea and the date of sentencing; or (vii) attempts to withdraw the plea of guilty.

Thus, the Government anticipates a final adjusted offense level of **26**. A pre-plea criminal history report was prepared which assessed the Defendant 14 criminal history points placing him in criminal history category VI. With an adjusted base offense level of 26, and criminal history category VI, the advisory USSG range is 120 to 150 months of incarceration.

Waiver of Appeal

By pleading guilty, the Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

Defendant's Consent to Proceed Remotely for Rule 11 Guilty Plea

Pursuant to the Coronavirus Aid, Relief, and Economic Recovery Act, H.R. 748 (the CARES Act), enacted on March 27, 2020, that certain federal court proceedings are permitted to proceed telephonically, or via video-teleconference. Section 15002(b) of the CARES Act permits the District Court to conduct certain hearings in felony matters remotely. Further, pursuant the District of Maryland's Standing Order 2020-06, dated March 29, 2020, and subsequent Standing Orders, District Court Judges are permitted to conduct Rule 11 plea hearings and sentencing hearings in felony cases remotely.

The Defendant consents after fully consulting with his attorneys to proceed with the Rule 11 plea hearing telephonically, or via video-teleconference, in this matter. Because an in-person /

in-court proceeding in this matter cannot occur without serious jeopardy to public health and safety, and because delay in this case will result in serious harm to the interests of justice, the Defendant specifically requests to proceed remotely. The Defendant agrees to proceed remotely, and knowingly and expressly waives any and all rights to a personal appearance in court in this matter.

<u>Knowing, Voluntary Plea; Satisfied With Attorney(s) Representation</u>

The Court must be satisfied that the Defendant has reviewed and understood all of the rights he is giving up by virtue of pleading guilty, as well as the possible penalties he is facing at sentencing. That the Defendant understands and voluntarily agrees to proceed with his guilty plea, and understands that he is subject to certain penalties, including at least 5 years of incarceration, as outlined above. In addition, the Court needs to be satisfied that the Defendant has had ample time to consider pleading guilty and the attendant consequences, to discuss same with his attorneys, and that he is completely satisfied with the representation of his attorneys. Further, that the Defendant's attorneys have carefully reviewed these rights and possible penalties with the Defendant, and that the Defendant has advised his attorneys that he understands his rights and the possible penalties. Further, that the Defendant's attorneys feel that the Defendant's decision to plead guilty and proceed to sentencing is an informed and voluntary one.

<u>No Agreement</u>

Given that the parties have not entered into any plea agreement, there are no agreements, promises, undertakings, or understandings between the Defendant and the Government with respect to the Guidelines calculation, the Defendant's criminal history, the sentence to be recommended, or any other issues related to sentencing.

Thank you for your consideration of this matter.

Very truly yours,

Jonathan F. Lenzner
Acting United States Attorney

_____
Judson T. Mihok
Mary W. Setzer
Assistant United States Attorneys

## ATTACHMENT A
## STATEMENT OF FACTS

*If this case had proceeded to trial, this Office would have proven the following facts, among others, beyond a reasonable doubt. The following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Jamie Clemons, (the "defendant") is 35 years old, and a resident of Pasadena, Maryland. At all times relevant to this case, the defendant lived approximately .6 miles from Coconut Charlie's, a restaurant and bar previously located at 9129 Fort Smallwood Road in Pasadena, Maryland. In the early morning hours of Friday, July 28, 2017, the defendant maliciously set fire to Coconut Charlies in an attempt to conceal evidence of an assault he had committed there on July 22, 2017.

On that prior occasion, Saturday July 22, 2017 at approximately 1:00 a.m., the defendant assaulted his girlfriend, N.M., outside on the patio area of Coconut Charlie's. An Anne Arundel County police officer witnessed this assault, and it was also captured by the video surveillance system of Coconut Charlie's. As a result of this incident, the defendant was charged with Assault Second Degree and Theft Less than $100 in the District Court of Anne Arundel County (Case Number: D-07-CR-17-01749) and was served with a summons for this case on July 27, 2017, the day before he committed the arson of Coconut Charlies. The surveillance camera that captured the defendant's assault was camera # 9, which was visibly located on the west exterior of the building.

On July 28, 2017, just prior to approximately 2:51 a.m., the defendant threw several cups (at least six) filled with gasoline onto the roof of Coconut Charlie's. At approximately 2:51 a.m., the defendant threw multiple incendiary devices (at least two), that is plastic cups filled with gasoline with a wick made from cloth that he lit prior to throwing at the structure of Coconut Charlie's. At least one incendiary device landed in the area of camera #9, the same camera that was visible and in the immediate vicinity of where the defendant had assaulted N.M. on July 22, 2017.

The fire that resulted steadily grew and was visible to a passerby who called 911 at approximately 3:06 a.m. Due to the size of the fire, several agencies responded in an attempt to control and extinguish the fire. While attempting to suppress the fire, firefighter K.G. sustained injuries due to the force of a backdraft that caused him to fall off a ladder. Firefighter K.G. sustained burns to his neck and both ears.

A fire scene examination was conducted, and the area of origin of the fire was determined to be the west exterior of the restaurant. Investigators reviewed the exterior camera footage from the video recording system, which remained operational after the fire, and were able to observe the initial fire event. Surveillance cameras captured multiple flashes of light (at least three), followed by a sustained fire on the west exterior of the structure.

Based upon fire patterns, fire dynamics, and the surveillance video, the cause of the fire was determined to be incendiary. The remains of multiple incendiary devices the defendant had thrown at the building were located on the roof and exterior grounds of the building. The items consisted of plastic cups filled with gasoline with wicks that were set on fire prior to throwing

same on to the roof and exterior patio of the building. Eighteen total items of evidentiary value were collected, fourteen of which were found to contain the presence of gasoline. Charred melted plastic cups, and a burnt cloth used as a wick material were recovered.

An accelerant detection K9 also alerted to the presence of gasoline on the west side of the exterior just on the other side of the fence surrounding Coconut Charlie's. This is the area where the defendant launched the devices at Coconut Charlie's. A short distance away, along the north side of the exterior of the property fence line, an XL glove was found which tested positive for the presence of an ignitable liquid. This glove also contained the defendant's DNA.

On November 30, 2017, a federal search warrant was obtained for the text message contents of the defendant's cell phone. The contents of those messages revealed that after the assault and in the days leading up to the fire, the defendant sent multiple text messages to several different people, expressing concern as to whether police would obtain the video surveillance of the assault, and as to what specifically the video had captured.

On July 26, 2017, the defendant texted someone, "Yea they'll probably get the video I'll be fucked more bs from fucking drinking told if I don't stop I'm gonna get n trouble." On the same day, he sent another text to another individual that read, "I mean I don't think they'll get the video it's not like she press charges n the cops from northern [police officer's name]." A different individual sent the defendant the text, "So he has zero proof then SMFH u got this he ain't getting far with those bogus charges…just the tape is all he has and [N.M.] can say u were kidding or something and she didn't press charges so that's good." The defendant texted that same individual "[owner of Coconut Charlies] will give them the tape." When the person responded that the charges wouldn't "stick," the defendant replied, "If they get the tape it will[.]"

In the early morning hours of July 28, 2017, the defendant assembled multiple incendiary devices akin to Molotov cocktails, then lit the wicks for the devices on fire, and threw them at the exterior of Coconut Charlie's in an attempt to burn the structure and the video surveillance system, which had captured his assault on his girlfriend the week prior. As a result of the arson, Coconut Charlies sustained over $500,000 in damage; the building was razed and the business was forced to permanently close.

A search of the National Firearm Registration and Transfer Record, which is the official repository for the National Firearms Act Division and records the registration of all lawfully owned and possessed incendiary devices revealed that the incendiary devices used by the defendant to commit the arson of Coconut Charlies were not properly registered.