IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal No.: 1:19-CR-00438-RDB-1 |
| JAMIE CLEMONS | * | |

* * * * * * * * * * * * *

SENTENCING MEMORANDUM

COVID-19

The matter of sentencing for Jamie Clemons presents to the Court many factors – some of which were anticipated and considered in the formation of the United States Federal Sentencing Guidelines; and many which were not. No one could have anticipated the Covid-19 pandemic nor the serious repercussions which occurred and have resulted in response thereto. Jamie Clemons was forced to live in a confinement with fear of contracting Covid-19, with his human rights abused and with his mental health compromised with lasting residual disability. No one should be compelled to endure such punishment nor such atrocities. The prison officials refused to do anything about the situation except to impose a 24 hour lockdown – known as "23 and 1" (even in the face of Congressional objection); however, this Court can correct the situation by applying common sense, human ideals, mercy, and good judgment in its final disposition of this case.

The Court's attention is directed to Washington Post articles dated April 19, 2021 and April 23, 2021. (provided herewith). At that time, inmates at the Central Treatment Facility (CTF) in Washington, DC had endured confinement described as "23 and 1" lockdown. Translated: inmates were compelled to spend 23 hours per day locked up in a

1

cell with 1 hour limitation out of that cell. There were no activities: libraries were closed, no barber was available, and inmates were not permitted to even go outside for a breath of fresh air. Quoted in that article is Craig Haney, a Psychology Professor at the University of California, Santa Cruz who has studied the effects of solitary confinement. Haney noted that a year of "23 and 1" lockdown would ordinarily be reserved for those who committed extraordinary breaches of prison rules, most likely involving acts of violence. Jamie Clemons is being housed pretrial with a clean record within the institution. Mr. Haney continued

> "The psychological and physical harm that such prolonged isolation can cause are legion: depression, anxiety, heart disease, erosion of self, and exacerbation of any existing mental illness, diabetes or hypertension. These problems can last well after an inmates release."

Jamie Clemons has suffered serious mental health issues as a result of the "23 and 1" confinement and will continue to live with the disabilities even after he is released from CTF.

A review of the last 450 days (actually more than that) and the conditions under which Jamie Clemons has been and is forced to live is shocking – inhumane treatment of individuals in these United States of America. Representative James Cromer (R-KY.), a ranking member of the House Committee on Oversight and Reform is quoted in the Washington Post article of April 19, 2021 characterizing the treatment of jail inmates as "something to be expected of authoritarian governments such as Russia."

Inhumane treatment? Jamie Clemons has been locked in his cell, released for one hour each day on a rotating schedule. Think about being confined to one's house for a week or ten days; the thought is horrifying. Now consider six months; one year; 18

months; 2 years. The mental impact is overwhelming and not being treated nor even considered by detention personnel. The psychological and psychiatric affects are not treated nor is counseling provided to assist in dealing with this inhumane situation. As the days dragged on, Jamie Clemons like other inmates began to lose hope. All he saw was a dark tunnel in front of him. Compound this situation with the ever present fear of Covid-19. Indeed, pretrial detention for Jamie Clemons (which will exceed twenty five months) created emotional and mental issues which can never be repaired. Jamie Clemons is currently being evaluated for mental health issues. When completed, the Court and Counsel will be provided with complete information.

Representative Clay Higgins (LA.) in referring to the treatment of the inmates described the inhumane situation as that the authorities were "essentially torturing its inmates." Jamie Clemons has been tortured on a daily basis by the inhumane treatment (as are other inmates) existing at CTF. The inhumane pretrial detention can only be corrected by this Court exercising its authority, common sense, and discretion - recognizing and considering this horrendous confinement - when applying the Federal Sentencing Guidelines. The Court must use its ability to grant downward departures and variances. A downward variance should be granted and a sentence of 60 months imposed which is sufficient but not greater than necessary.

## OVERREPRESENTATION OF CRIMINAL HISTORY OF JAMIE CLEMONS

The United States Sentencing Guidelines provide for the calculation of the Defendant's criminal history. In doing so, the guidelines committee established a point system rating the previous offenses and assessing the points by the nature of the crime, the seriousness of the crime, and the sentence(s) imposed. However, the committee recognized and suggested that such an archaic system of assessing points could result in calculations which over represent the seriousness of the Defendant's criminal history. The most detailed and excellent submission by Turner Mebane discusses the over representation based upon the nature of the individual convictions and how the numbers over represent Jamie Clemons' criminal history.

The United States Sentencing Guidelines invite the Court to do a more in depth review of the Defendant's criminal history with regard to the issue of whether the numerical calculation over represents the seriousness of the Defendant's criminal history. What is blatantly clear is that Jamie Clemons has been using (and abusing) steroids since the age of 17. The National Institute on Drug Abuse in its research report entitled Steroids and Other Appearance and Performance Enhancing Drugs (APEDs) provides extensive research into the influence steroids have on one's behavior. The Section entitled "How Does Anabolic Steroid Misuse Affect Behavior" (provided herewith) provides the introduction into the understanding of the prior behavior of Jamie Clemons:

> "Case reports and small studies indicate that anabolic steroids increase irritability and aggression, although findings may be confounded by personality traits that are overrepresented in steroid users (i.e., antisocial, borderline, and histrionic personality disorder) and the use of other drugs. People who misuse anabolic steroids report more

> anger than nonusers, as well as more fights, verbal aggression, and violence toward their significant others, sometimes called "roid rage." . . .
>
> "Scientist have attempted to test the association between anabolic steroids and aggression by administering high steroid doses or placebo for days or weeks to human volunteers and then assessing behavioral symptoms. In one such study, researchers found that testosterone over a six week period was associated with increased aggression, as assessed by a questionnaire and computer-based model of aggressive behavior."

As noted, the increase in aggression was documented after administering high steroid doses with placebo for days or weeks to human volunteers. Jamie Clemons has been using steroids since the age of 17. The frequent use of steroids (actually on a daily basis) explains the number of domestic violence assaults. Combining the steroid abuse with excessive alcohol consumption gives an even sharper picture and better understanding of the numerous assaults and driving violations. In the publication by Alcohol Addiction Center entitled "What Are The Effects Of Mixing Steroids With Alcohol" (provided herewith) one notes the following:

> "Excessive abuse of alcohol has some of the same side effects as using steroids, so combining the two essentially doubles the chances of these side effects becoming an issue."

The Court's attention is directed to the research of P. Y. Choi and H. G. Pope Jr. encompassed in their report entitled "Violence Toward Women and Illicit Androgenic-anabolic Steroid Use" (provided herewith) published in the National Institute of Health (NIH) National Library of Medicine. Rather than taking the chance of misstating the efforts and results of their research, Counsel submits their words:

> "Substantial evidence now suggests that increased aggression is associated with illicit use of anabolic-

5

androgenic steroids (AAS) by athletes. Anecdotal reports claim that wives and girlfriends of the athlete sometimes become victims of physical abuse when their significant other is using these drugs. We sought to investigate these claims empirically. Twenty-three AAS user strength athletes and 14 nonuser athletes, recruited in the courts of a larger study, were interviewed using the Dyadic Adjustment Scale and the Conflict Tactics Scales to access their relationships with their significant other. AAS users were asked about their relationship during their most recent "cycle" of AAS use and their most recent AAS-free period. Nonusers were asked about their relationship in the last 3 months. AAS users reported significantly more fights, verbal aggression, and violence toward their significant others when using AAS than when not using AAS. The AAS users on-drug differed significantly from nonusers on two of these indices, but AAS users off-drug significantly differ from nonusers. These findings support the anecdotal evidence that wives and girlfriends of AAS users may be at risk of serious injury from users while they are on-drug. Thus, AAS use may impose risks not only to the user, but also to the women close to them."

With the benefit of the information gleaned from this research, let us review the criminal history of Jamie Clemons.

Page 7 of the Presentence Report submitted by Helen Domico is captioned Adult Criminal Conviction(s) and commences with Paragraph 35. The adult criminal conviction(s) continues for nine pages and encompasses Paragraphs 36-55. Of the twenty entries only 2 cannot directly be associated with the use of steroids and alcohol. Suffice it to say, it is likely that even these two convictions, both theft convictions, were directly or indirectly related to the abuse of steroids and alcohol.

Steroids and alcohol have been shown to cause aggressiveness and lost of anger control. What could be more explicit examples:

1. Malicious Destruction – 2 instances
2. Trespass – 2 instances, one involving his car gets stuck on a person's property.
3. Violation of Exparte Orders – 2 instances

4. Negligent Driving – 2 instances
5. Driving on Suspended and/or Revoked License – 2 instances
6. Leaving the Scene of a Property Damage Accident – 1 incident
7. Driving Under the Influence and/or Driving While Intoxicated – 2 instances
8. Assault Second Degree (Domestic Violence) – 3 instances

Malicious Destruction, Trespass, Violation of Exparte Orders, and Domestic Violence Assaults – all the result of lost of anger control. In each instance, a minor argument escalates into aggressive behavior exactly as explained by the research conducted by NIH. Jamie Clemons was like a kettle on the stove when the stove top was activated. As the water became hotter, the water began to boil and ultimately exploded into steam. As the argument continued Jamie Clemons began to boil and ultimately exploded. He was a text book case described in the research by the National Institute of Health.

One might ask how Jamie Clemons became so attached and addicted to steroids and alcohol. The answer goes back to his date of birth. Jamie Clemons was born prematurely and was extremely small in size. That inferior stature stayed with him causing him to fear his size as he grew. Ultimately, Jamie Clemons resulted to muscular workout at the gym, lifting weights and other body building exercises. However, he always considered himself small and inferior and as a result resorted to steroids. Not just one steroid was sufficient, Jamie Clemons consumed numerous steroids. Orally he would take steroids daily, supplemented by injections 3 times a per week. The more he consumed, the more he needed; the more he needed, the more he consumed. The continual use and abuse of the steroids amplified by alcohol dominated his behavior and destroyed his anger control.

Jamie Clemons has now spent almost two years incarcerated in the most inhumane manner and under the most adverse circumstances. He has witnessed the downfall of many an inmate and has been able to scrutinize his own behavior. Behold: the recognition of what the use and abuse of steroids and alcohol has done to his life. Jamie Clemons wants help. He is ready to adjust his way of life - staying away from steroids, alcohol, and any mind-altering substance. He is prepared to participate in treatment and counseling in order to maintain a drug free life.

Certainly, the Adult Conviction(s) section of the Presentence Report is lengthy but it is typical of a person using and abusing steroids and alcohol. That the offenses were minor in nature is demonstrated by the minimal sentences that were imposed. That the offenses were the result of loss of anger control leading to aggressive behavior, particularly the domestic violence issues, are explained by the use of steroids and alcohol. That Jamie Clemons can become an active and participating member of the community with appropriate supervision and counseling is evident from the Presentence Report of Helen Domico and the submission of Turner Mebane. That this Court can impose a sentence which reflects the seriousness of the offense on the one hand and the reconstruction of Jamie Clemons on the other is what is appropriate and proper.

Counsel suggests the case of United States v. Nelson, 166 F. Supp. 2d 1091 is instructive and appropriate for the current matter. In his Memorandum Opinion, United States District Judge Lee reviews not only the pertinent sentencing guidelines, but also a number of comparable cases. The court lowered defendant's criminal history category from VI to III. In doing so, Judge Lee noted that the defendant's prior record combines drug charges such as Possession of Marijuana and Paraphernalia with other minor offenses

such as Trespassing and traffic infractions. Jamie Clemons' prior record combines domestic assaults (discussed at length in view of steroid and alcohol abuse) with "other minor offenses" such as trespassing and traffic infractions. Judge Lee "concludes that defendant's criminal history category VI significantly overstates the seriousness of his prior criminal record and his record is considerably less serious than offenders typically found within the criminal history category VI which is typically composed of defendants convicted of multiple drug distribution and violent offenses." As with Nelson, the criminal history category VI well overrepresents the seriousness of his criminal history and a similar downward departure to criminal history VI is appropriate.

The criminal history of Jamie Clemons is explained and understood. The review of the history demonstrates that merely calculating the numbers (points) is not reflective of the person, Jamie Clemons. Indeed, the calculation of points creates an overrepresentation of Jamie Clemons' criminal history and screams for downward departure. As suggested in the submission of Turner Mebane and the holding of Judge Lee, a downward departure to Criminal History Category III is appropriate with imposition of a 60 months sentence.

## CONCLUSION

For the reasons set forth above, Jamie Clemons requests that this Court grant appropriate Downward Departure and variance to the United States Sentencing Guidelines and impose a sentence of 60 months.

/S/
_____
HOWARD L. CARDIN
Federal Bar No. 00459
309 Allegheny Avenue
Towson, MD  21204
410-727-3868
HLCardin@aol.com

/S/
_____
DAVID N. MABREY
Federal Bar No. 20191
8611 Fort Smallwood Road
Pasadena, MD 21122
443-848-2878
davidnmabreylaw@gmail.com

Attorneys for Defendant

## CERTIFICATE OF MAILING

I hereby certify that on this 13th day of July, 2021, I filed the above electronically with the Clerk of the United States District Court using CM/ECF with copies to all counsel of record.

/S/
_____
HOWARD L. CARDIN