# XUSPO SENTENCING CONSULTANTS
### MITIGATION & INVESTIGATIONS

# XUSPO SENTENCING CONSULTANTS
### MITIGATION & INVESTIGATIONS

**Comprehensive Sentencing Mitigation Report**
for
Jamie Clemons
Dkt. No.: RDB-19-0438-001

According to the provisions of 18 U.S.C. § 3553, the Court shall impose a sentence that is sufficient, but not greater than necessary, to comply with statutory purposes of sentencing, and in determining such sentence, the Court shall consider, *inter alia*, (1) the nature and circumstances of the offense, and the history and characteristics of Jamie Clemons, and (2) the need for the sentence imposed, as set forth in 18 U.S.C. § 3553(a)(2).

In consideration of the sentence that must be imposed in this case, Jamie Clemons respectfully requests that the Court consider the following information in mitigation of his sentence:

## <u>Sources of Information</u>
Interviews with Jamie Clemons (client) and his attorneys, Howard Cardin and David Mabrey, in-person and via videoconference.
Interview with James L. Clemons, Sr. (father).
Interview with Wanda Clemons (mother).
Interview with James L. Clemons, Jr. (brother).
Interview with Jessica Clemons (sister-in-law).
Indictments, Plea Agreement, and other case materials for the instant offense.
Presentence Investigation Report dated June 17, 2021.



4401 Apex Lane
Suite 100
Beltsville, MD 20705

PHONE   240-583-1864
FAX   301-567-5727
EMAIL   turner@xuspo.com
WEBSITE   www.xuspo.com

Jamie Clemons and all informants were notified that information disclosed would be shared with his attorneys and could appear in a report to the Court.

### Current Posture of Jamie Clemons

On April 6, 2021, Jamie Clemons appeared in the U.S. District Court for the District of Maryland located in Baltimore, Maryland, before the Honorable Richard D. Bennett, U.S. District Judge, and pled guilty to Count 1: Malicious Destruction of Property by Fire, in violation of 18 U.S.C. § 844(i). A Presentence Investigation Report was ordered, and sentencing is scheduled to be held on October 28, 2021, at 11:00 a.m.

Jamie Clemons has been continuously detained since his initial appearance on September 12, 2019, and has not been engaged in any conduct that would jeopardize his acceptance of responsibility in this case.

### Offense Conduct

On Saturday, July 22, 2017, Jamie Clemons assaulted his girlfriend, N.M., outside on the patio area of a restaurant/bar named Coconut Charlie's located in Pasadena, Maryland. An Anne Arundel County police officer witnessed the assault, and it was also captured by the restaurant's video surveillance system.

As a result of this incident, Mr. Clemons was charged with Assault – 2nd Degree and Theft – Less than $100 and was served a summons on July 27, 2017, to appear in the District Court for Anne Arundel County (Case No.: D-07-CR-17-01749).

In the early morning hours of July 28, 2017, Mr. Clemons went to Coconut Charlie's and threw several cups filled with gasoline onto the roof of Coconut Charlie's. The client then threw multiple incendiary devices, plastic cups allegedly filled with gasoline with a lit wick made from cloth, that was thrown at Coconut Charlie's structure.

A fire resulted from Mr. Clemons' actions. As the fire steadily grew, it was seen by a passerby who called 911. Due to the size of the fire, several fire department units responded to control and extinguish the fire. While attempting to suppress the fire, one firefighter sustained burn injuries to his neck and both ears after falling off a ladder due to the force of a backdraft. The firefighter received medical treatment on-sight and resumed his duties of battling the fire.

Once the fire was extinguished, a fire scene examination was conducted and evidence was collected, including an XL glove that tested positive for the presence of an ignitable liquid. This glove also contained Mr. Clemons' DNA.

2

On November 30, 2017, a federal search warrant was obtained for the text message contents of Mr. Clemons' cellular phone. The contents of those messages revealed that after the assault and in the days leading up to the fire, the client sent multiple text messages to several different people, expressing concern as to whether police would obtain the video surveillance of the assault and as to what specifically the video had captured. It was determined Mr. Clemons attempted to burn the structure of Coconut Charlie's and destroy its video surveillance system which had captured his assault on his girlfriend the week prior.

As a result of the arson, Coconut Charlie's sustained over $500,000 in damages, the building was razed, and the business was forced too permanently close.

### Codefendants/Related Cases
None.

### Statutory Penalties
Count 1: Malicious Destruction of Property by Fire (18 U.S.C. § 844(i)) – Not less than five (5) years and not more than twenty (20) years.

### Impact of the Plea Agreement
Mr. Clemons pled guilty to Count 1 without the benefit of a plea agreement in this case.

### Guideline Calculations
Pursuant to Appendix A of the United States Sentencing Manual, for an offense in violation of 18 USC § 844(i), the applicable guideline is found under USSG §2K1.4 – *Arson; Property Damage by Use of Explosives*.

During this instant offense, Mr. Clemons' conduct resulted in the destruction of Coconut Charlie's, a restaurant/bar in Pasadena, Maryland. If the offense involved the destruction of a place of public use, the base offense level is 24, pursuant to USSG §2K1.4(a)(1)(B).                              **24**

Mr. Clemons committed the arson in an attempt to destroy Coconut Charlie's video surveillance system that captured an assault he committed on July 22, 2017. If the offense was committed to conceal another offense, increase the offense by 2 levels, pursuant to USSG §2K1.4(b)(1).               **+2**

According to Mr. Clemons' legal counsel, the Government failed to provide critical information, DNA details and comparisons, in a timely manner. As a result, Mr. Clemons had to retain the services of a DNA expert to examine the evidence and present findings. Mr. Clemons had to wait until he all the available information to make an informed decision regarding his plea in this case. Subsequently, Mr.

Clemons acknowledged his guilt, accepted full responsibility for his conduct, and notified the Government of his decision to plead guilty.

Defense Counsel contends that if the Government had not delayed in providing the DNA evidence, Mr. Clemons would not have delayed in entering a plea and should be entitled to a 3-level downward adjustment pursuant to USSG §3E1.1(a) & (b).                                                                      **-3**

Based on these findings, it is Mr. Clemons' belief that the total offense level for this offense is 23.                                                                                           **23**

### Legal History

The United States Probation & Pretrial Services Office completed a Presentence Investigation Report in this case on June 17, 2021, and determined Mr. Clemons' prior convictions resulted in a total criminal history score of fifteen (15). A criminal history score of thirteen (13) or more points establish a Criminal History Category of VI.

We thoroughly reviewed the Presentence Investigation Report and did not find any calculation errors that would negatively impact the client's criminal history score or Criminal History Category.

### Applying the Factors of 18 U.S.C. § 3553(a) to Jamie Clemons

#### Jamie Clemons' Demographics & Family Structure

The following information regarding Jamie Clemons' history and characteristics is offered as a supplement to the presentence investigation report prepared by the U.S. Probation and Pretrial Services Office.

Jamie Nelson Earl Clemons was born on December 16, 1985, in Baltimore, Maryland. Jamie is the younger of two sons born from the legal union of James Lee and Wanda Clemons (nee: Lee).

Mr. Clemons' parents, James (age 61) and Wanda (age 60) Clemons, are still married and reside together in Pasadena, Maryland. From his parents' marriage, Jamie only has one older brother, James L. Clemons, Jr. (age 38), who resides with his wife and children near his parents in Pasadena, Maryland.



L-R: James, Sr., Wanda, James, Jr., & Jamie Clemons

Mr. Clemons only has one sibling, an older brother, James L. Clemons, Jr. (age 38), who is one (1) year older, and they also enjoy a close relationship. Due to their closeness, Jamie served as his brother's best man when he got married a few years ago.



Jamie, his sister-in-law Jessica, James, Jr., and Jessica's maid of honor

Also, James, Jr. owns a trucking company, JC Trucking, located in Pasadena, Maryland, and he has employed Jamie as a truck driver/transporter for several years and will rehire Jamie once he is released from incarceration.

Mr. Clemons has never been married, and he does not have any children.

When he was arrested for this instant offense, Jamie was living with his parents in their home located at 9243 Fort Smallwood Road, Pasadena, Maryland. Since he has been detained, Mr. Clemons' parents have sold this residence and moved to another home in the nearby vicinity.

*Developmental History, Home Environment, and Characteristics*
Mr. Clemons was born two months premature and had to remain in the hospital for approximately two weeks to reach the weight of 5 lbs. and be eligible for discharge. Due to being born premature, Jamie has always been slightly smaller than his peers.

 

Jamie reported he and his brother were raised by their parents in a loving, close-knit, stable household. According to Mr. Clemons, his parents owned two homes. One was a rental, and they lived across the street in the other residence. To the best of Jamie's memory, he and his brother always had what they needed, and there is no history of abuse nor neglect in his childhood.

Although Jamie has a close relationship with his mother, he and his brother are extremely close to their father and grew up idolizing him. In fact, Jamie and his father share a special bond because they were born on the same day of the year.




James, Jr., James, Sr., & Jamie          Jamie, James, Sr., & James, Jr.



Jamie and his dad, James, Sr.

Although he does not have any biological children, Jamie has a close relationship with his brother's two young daughters. Prior to being detained for this instant offense, "Uncle Jamie" would always be present for any extracurricular activity his nieces were participating in, and he would spoil them with gifts, love, and affection on their birthdays, holidays, and special occasions.


*"Uncle Jamie" spending time with one of his nieces*

*Medical*
Mr. Clemons reported he is not suffering from any medical ailments, not under the care of a physician, and not taking any prescribed medications. Also, Jamie does not wear corrective lenses, not suffering from a hearing impairment, and does not have any dental problems.

When he was approximately 25 years old, Jamie was involved in an altercation that resulted in his jaw being broken and surgery to repair it.

*Mental Health and Addictive Behavior*
Mr. Clemons has no known diagnosed mental health disorders. However, his prior arrests for assaultive behavior indicate Jamie may have anger management problems and a lack of impulse control.

According to Mr. Clemons' family and close friends, he seems to always make poor choices in the women he becomes romantically involved with. The women he dates all seem to fit a similar profile, and they all learn how to push Jamie's "button" which resulted in both of Mr. Clemons' prior convictions for Assault – 2nd Degree.

To address his anger management issues, Mr. Clemons was court-order to attend treatment at Alcohol and Drug Intervention (ADI) located in Glen Burnie, Maryland, in 2007 and 2010. Jamie successfully completed the program each time he attended.

After pleading guilty to this instant offense, Defense Counsel has attempted to have Mr. Clemons undergo a more thorough psychiatric examination to determine if Jamie has any undiagnosed mental health issues. However, this

evaluation has not yet been completed due to staffing issues and the Covid-19 restrictions at the detention facility where Jamie is being held.

Mr. Clemons has reported he is more than willing to undergo a psychiatric examination, and he is receptive to participating in mental health treatment while incarcerated in the U.S. Bureau of Prisons.

According to Mr. Clemons, he began consuming alcohol regularly when he was approximately 16 years old. When this instant offense occurred, Jamie admitted he was consuming alcohol, usually to intoxication, at least five (5) times a week.

As previously noted, due to his premature birth, Mr. Clemons was always smaller in comparison to most of his peers. Unfortunately, he turned to abusing anabolic steroids to help make his body bigger due to his desire to excel in powerlifting and body fitness. Mr. Clemons admitted he would obtain and use anabolic steroids from "off the street" beginning at the age of 17 years old until he was arrested for this instant offense. Mr. Clemons denied using any other illegal controlled substance.

Due to prior arrests for alcohol related motor vehicle violations, Jamie participated and completed a 26-week substance abuse treatment program in 2017 at SPJ Consultants, Inc. located in Odenton, Maryland. Mr. Clemons has not had any additional substance abuse treatment. Due to his failure to report his usage, Mr. Clemons also has never had any treatment that specifically addressed his abuse of anabolic steroids.

It should be noted that there is a history of alcohol abuse on Jamie's maternal side of his family and a history of alcohol and drug abuse on his paternal side of his family. His maternal grandfather and an uncle were alcoholics. His father abused alcohol, but reportedly stopped drinking after his fifth DUI in 1992. Also, Jamie's paternal uncles regularly abused controlled substances.

### *Education and Employment*
Mr. Clemons received his high school diploma when he graduated in 2002 from Chesapeake High School located in Pasadena, Maryland. Jamie has not attended any other educational or vocational institution since high school.



Jamie at his high school graduation in 2002

Since he was 21 years old, Jamie has worked as truck driver for his brother's trucking company as either an employee or as an independent sub-contractor. From this employment, Mr. Clemons reported he earned between $800-$1,500 a week.



Jamie working at JC Trucking Company

Additionally, Jamie is a "jack of all trades" due to having the unique ability and broad knowledge to perform almost any trade that requires the use of his hands.

*Community Support*
Mr. Clemons' brother, James L. Clemons, Jr., advised he would be willing to rehire Jamie once he has been released from custody and reobtained his CDL license that has expired. Additionally, Jamie's parents stated they are willing to

10

support their son and provide him with housing as he reestablishes himself in the community.

## *The Nature and Circumstances of the Offense*

There are least five factors in mitigation of the nature and circumstances of the offense that may be pertinent to the provisions of USSG §1B1.4 - *Information to Be Used in Imposing Sentence (Selecting a Point within the Guideline Range or Departing from the Guidelines).* Although these considerations do not challenge the propriety of the guilty plea and finding of guilt by the Court, they are relevant to the nature and circumstances of the offense.

From the age of 17 until he was arrested for this instant offense at the age of 34, Mr. Clemons has been illegally abusing anabolic steroids. "Drastic mood swings and 'roid' rage are common red flags of prolonged steroid abuse. Steroid abuse can result in dramatic personality changes over time." (Juergens, 2021) Although Jamie participated in substance abuse treatment, this treatment addressed his abuse of alcohol, and he did not disclose his abuse of anabolic steroids.

As the probation officer noted in the Presentence Investigation Report, "Mr. Clemons needs additional substance abuse and mental health treatment." "The defendant has a lengthy criminal record for mostly misdemeanor convictions; however, his criminal record tells a story of someone who is suffering from anger management and substance abuse related problems."

Mr. Clemons was not in his right mind when he committed this instant offense due to being under the influence of alcohol and/or anabolic steroids. According to USSC §5H1.4, drug or alcohol dependence or abuse ordinarily is not a reason for a downward departure. However, we believe Jamie's case is outside the heartland and his years of substance abuse played a major role in the offense and should be considered as a mitigating factor in this case.

Secondly, we believe a Criminal History Category of VI over-represents Mr. Clemons' criminal history. For most offenders with a Criminal History Category of VI, their criminal history consists of active, violent behavior. In Jamie's case, his entire criminal history consists of offenses that are classified as misdemeanors by the state of Maryland. Also, four of his criminal history points are for motor vehicle offenses.

The probation officer believes that Mr. Clemons' criminal history is under-represented because there were several convictions that were not scored due to age. However, the probation officer failed to realize that these prior convictions resulted in sentences of probation or a fine and each would have received one (1) criminal history point, pursuant to USSG §4A1.1(c). Even if these convictions

were not too old, they would not have impacted Mr. Clemons' criminal history score because only a total of four points under USSG §4A1.1(c) are used.

Mr. Clemons's prior convictions that occurred in his 20s received ten (10) criminal history points. But in the past eleven (11) years, Jamie's prior convictions have only resulted in a five (5) criminal history points. A defendant with four (4) to six (6) criminal history points has a Criminal History Category of III.

Jamie makes bad decisions and lacks impulse control because of his abuse of alcohol and anabolic steroids which is reflected in his prior criminal history. Because of his lack of rational thinking, this offense was committed in an attempt to prevent his prosecution for a Second-Degree Assault in which he was eventually sentenced to two (2) years of unsupervised probation. Jamie Clemons is not a violent offender, and we believe a Criminal History Category of III more accurately represents Mr. Clemons' propensity to reoffend and his Criminal History Category at this point in his life.

Additionally, Mr. Clemons has strong support from his parents and brother who are willing to provide financial support not only for his room and board, but also for substance abuse and mental health treatment upon his return to society. In *U.S. v. Wachowiak*, 412 F.Supp.2d 958 (E.D. Wisc. 2006), the Court imposed a below guideline sentence of 70 months in a porn possession case where the guidelines were 120-151 months due the guidelines failing "to account for the strong family support the defendant enjoyed, which would aid in his rehabilitation and re-integration into the community."

Lastly, we ask that the Court also take into consideration as a mitigating factor that Mr. Clemons was subjected to a 23-hour-a-day lockdown for over one (1) year due and put in danger to exposure to Covid-19 and tuberculosis due to unsanitary conditions while detained at the Washington, DC Department of Corrections and awaiting further proceedings in this case.

"The 23-hour-a-day lockdown has been denounced by experts as a human rights abuse and a form of mass solitary confinement" (Jamison, 2021) without some of the basic services afforded to even those in solitary confinement during normal times, including barber and library services.

Due to this cruel and inhumane treatment and the other mitigating factors, it is respectfully requested that the Court consider imposing a downward departure or a variance sentence of sixty (60) months incarceration in Mr. Clemons' case.

## *The Need for the Sentence Imposed to reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense*

According to the Presentence Investigation Report, the probation officer has recommended to the Court that a sentence of 125 months, the high end of the advisory guidelines range, be imposed in this case. The probation officer appears to justify this recommendation due to Mr. Clemons committing this offense to conceal another offense, his prior misdemeanor convictions for assaultive behavior and failure to abide by court ordered protective/ex parte orders, and the harm caused to victim by Jamie's offense conduct.

However, all these factors have already been taken into consideration during the calculations of Mr. Clemons' offense level and Criminal History Category. To consider them again is unfair to Jamie and does not help the Court to fashion a sentence that is sufficient, but not greater than necessary, to satisfy the provisions in 18 U.S.C. §3553(a)(2).

Recognizing that federal law classifies a felony as being an offense punishable by a term of imprisonment exceeding one year, all of Mr. Clemons' prior convictions are classified as misdemeanors by the state of Maryland. Due to being misdemeanors, the longest term of incarceration previously imposed upon Jamie was one (1) year and twenty-one (21) days.

If the Court adopts the probation officer's recommendation, a 125-month sentence would be almost ten (10) times greater than any sentence previously imposed. Although this sentence would reflect the seriousness of the offense. It would not promote Mr. Clemons' respect for the law nor provide a just punishment by being punished so harshly for his first federal offense. However, a term of incarceration of 60 months, that is almost five (5) times greater than any sentence previously imposed, would not only reflect the seriousness of the offense, but also promote Mr. Clemons' respect for the law as a first-time federal offender by showing leniency, and provide a just punishment contemplated by Congress that is sufficient, but not greater than necessary, to satisfy the provisions in 18 U.S.C. §3553(a)(2).

Just like a Criminal History Category of VI, we believe that a sentence at the high end of the advisory guidelines range should be reserved for the most violent offenders. Mr. Clemons is a troubled young man who committed a terrible act, not a violent, hardened criminal.

13

### *The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct*

Although Mr. Clemons has been arrested numerous times, for most of his convictions, he has either been initially placed on probation or required to pay a fine. On those occasions when incarceration was imposed, the longest sentence imposed was one (1) year and twenty-one (21) days. Should the Court impose a sentence of sixty (60) months incarceration, this would be the longest sentence Mr. Clemons has ever served. Not only is sixty (60) months a just sentence, but it also satisfies the statutory minimum requirements, would deter Mr. Clemons from further criminal conduct, and provides adequate deterrence to others from committing a similar crime.

"Laws and policies designed to deter crime by focusing mainly on increasing the severity of punishment are ineffective partly because criminals know little about the sanctions for specific crimes. More severe punishments do not 'chasten' individuals convicted of crimes, and prisons may exacerbate recidivism." (U.S. Department of Justice National Institute of Justice, 2016) Consequently, a prison sentence longer than sixty (60) months could have the opposite effect upon Mr. Clemons that is desired by the Court.

"Research has clearly shown that the chance of being caught is a vastly more effective deterrent than punishment." (U.S. Department of Justice National Institute of Justice, 2016) Therefore, we respectfully recommend the Court sentence Mr. Clemons to a sixty (60) month term of incarceration to be followed by three (3) years of supervised release with special conditions to address his individual needs while under the watchful eye of the supervising U.S. Probation Officer.

### *The Need for the Sentence Imposed to Protect from Further Crimes by Jamie Clemons*

It is well known that as a defendant gets older, the likelihood of recidivism decreases. Mr. Clemons' criminal behavior is reflective of this fact as 79% of his prior convictions occurred when he was under the age of 30. Likewise, 21% of his prior convictions, including this instant offense, occurred when he was 30 years old or older. Jamie will be 37 years old in December 2021. Should the Court impose a sentence of sixty (60) months incarceration, Mr. Clemons will be almost 40 years old when he is eligible for release.

According to data contained in the U.S. Sentencing Commission's 2016 Report on Recidivism Among Federal Offenders: A Comprehensive Overview, the likelihood of an individual between the ages of 36 to 40 being rearrested after their release from federal custody is 48.6%. For a white male, the likelihood of rearrest decreases to 41.7%.



Figure 11.
Rearrest Rates for Recidivism Study Offenders by Age at Sentencing and Release

Figure 12.
Rearrest Rates for Recidivism Study Offenders by Selected Demographic Characteristics

It is probable, Jamie Clemons will not be same reckless young man that he was during his teens and 20s when he is released from federal prison for this offense. A sentence of sixty (60) months would protect the community, free up resources to be utilized on defendants who pose a greater threat to society than Jamie Clemons, and be sufficient, but not greater than necessary to achieve the goals of sentencing.

### *To Provide Jamie Clemons with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner*

Due to his conviction for Arson, Mr. Clemons will not be eligible for participation in the Bureau of Prison's 500-hour Residential Drug Abuse Program (RDAP). Although the Bureau of Prisons provides the Nonresidential Drug Abuse Program (NDAP) for those inmates not eligible for RDAP, NDAP is not as intense as RDAP and is only comprised of 90–120-minute weekly group treatment sessions, for a minimum of 12 weeks and a maximum of 24 weeks. Jamie has abused anabolic steroids for years. We believe his substance abuse needs will not be adequately addressed while he is incarcerated.

In *U.S. v. Jones*, 158 F.3d 492 (10th Cir. 1998), the Court ruled the district court did not abuse its discretion in departing downward by three levels when, as one of eleven factors, it considered that imprisonment would sever the defendant's access to rehabilitative counseling – "one of the purposes of sentencing is to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner." Thus, we believe a downward departure or variance sentence of sixty (60) months is warranted so that Mr. Clemons can get the treatment he needs as soon as possible that the Bureau of Prisons will not adequately provide.

### The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct

One of the most difficult and relevant factors this Court must consider is the need to avoid unwarranted sentencing disparities.

According to the United States Sentencing Commission's statistics for Fiscal Year 2020, the national mean sentence length for arson offenses was 78 months imprisonment and the median sentence length was 60 months imprisonment. For the Fourth Circuit specifically, the mean sentence length was 79 months imprisonment, and the median sentence length was 65 months imprisonment.

Thus, a sentence of 60 months in Mr. Clemons' case would be in-line with the median sentences imposed for similarly situated defendants not only nationally but also within the Fourth Circuit.

### The Need to Provide Restitution to the Victim

In this case, Mr. Clemons owes more than $500,000 in restitution. Barring any unforeseen circumstances, Jamie will resume working for his brother's company as a truck driver. The sooner Mr. Clemons can continue working, the sooner he can begin making restitution to the victim.

A downward departure or a variance sentence of sixty (60) months would allow Mr. Clemons to be released from imprisonment as the earliest time allowed by the statute of conviction and begin paying restitution to the victim sooner.

Although Jamie will have the opportunity to pay restitution while incarcerated through the Bureau of Prison's Inmate Financial Responsibility Program. The amount he earns while incarcerated pales in comparison to what he could earn once he returns to society.

### Summary and Assessment

Although the property damage was extensive and a business was shuttered, no one died or was critically injured in this instant offense. If the Court were to

impose the sentence recommended by the probation officer, Mr. Clemons would lose over ten (10) years of his life based primarily on a Criminal History Category that over-represents the propensity of his criminal behavior.

Based on our guideline calculations of an offense level of 23 and a downward departure to a Criminal History Category of III, the advisory sentencing guidelines range would be 60-71 months, pursuant to USSG §5G1.1(c)(2).

In consideration of the forgoing discussion and analysis, we believe there is ample evidence in mitigation to allow the Court to impose a sentence of sixty (60) months.

We have attempted to fully address the factors in 18 U.S.C. § 3553(a) that the Court must consider. Jamie Clemons respectfully requests that the Court utilizes this information to satisfy its mission to impose a sentence that is sufficient, but not greater than necessary under the circumstances of this case.

The forgoing comprehensive sentencing mitigation report has been prepared on behalf of Jamie at the request of his Defense Counselor, Howard L. Cardin and David Mabrey, and is submitted in support of sentencing on July 13, 2021, before the Honorable Richard D. Bennett, United States District Judge for the United States District Court for the District of Maryland, Northern Division.

Respectfully submitted,

Turner R. Mebane, Jr.
XUSPO Sentencing Consultants
Report completed: July 11, 2021

References

Jamison, P. (2021, April 23). D.C. Officials Ignore Growing Pressure to End 23-Hour Coronavirus Lockdown at Jail. *The Washington Post*.

Juergens, J. (2021, June 21). *Anabolic Steroid Symptoms and Warning Signs*. Retrieved from www.addictioncenter.com:
https://www.addictioncenter.com/stimulants/steroids/symptoms-signs/

U.S. Department of Justice National Institute of Justice. (2016). *Five Things About Deterrence*. Washington, DC: U.S. Department of Justice.

Attachments:      Character Letters on Jamie Clemons behalf (3)
                  Treatment Completion Certificate – SPJ Consultants, Inc.

5/12/2012

The Honorable Richard D. Bennett

United States District Judge

c/o Howards L Cardin

Cardin and Gitomer PA

309 Allegheny Avenue

Towson, MD, 21204

RE: Jamie Nelson Earl Clemons

Dear Honorable Richard D. Bennett

I, Wanda Clemons, am the mother of Jamie Clemons. I am writing this letter on his behalf to give details of Jamie Clemons life growing up as a small child. I had Jamie at 7 months, he was early and only weighed 3 lbs. 2 oz. He was born on December 16th, 1984, which is his father's birthday. I have always felt that this was god's plan, and that he was a blessing on his fathers' birthday.

Jamie Clemons started elementary school as a small boy. He always did well in school, enjoyed and got good grades on his report cards. In high school he started weightlifting in gym class. He wanted to build his body up to make him feel better about himself and being a smaller boy. He continued doing well in high school and getting good grades. On the weekends he would work with his father and his brother, James Clemons Jr, did too. He started working at a young age, 10 years old, and saving money to get his first truck. After high school, Jamie continued with weightlifting to keep body image up. After a while I stated to see changes in his mood, and in his behavior- this is when I found out about his steroid use.

I do believe that Jamie should start a drug rehabilitation treatment program. I am sure it will get Jamie in the right direction in life. Before his arrest, Jamie was working with his brother, James Clemons Jr, driving a rollback hauling cars. His brother is hoping that after the rehabilitation he can come back to working for him. He was a good and hard worker.

Thank you truly for taking the time in reading this letter,

Wanda Clemons

The Honorable Richard D. Bennett

United States District Judge

c/o Howards L Cardin

Cardin and Gitomer PA

309 Allegheny Avenue

Towson, MD, 21204


RE: Jamie Nelson Earl Clemons


Dear Honorable Richard D. Bennett

I am writing regarding Jamie Clemons and the memories I have of him. My name is Jessica Clemons, I am his sister in law. I want to express my feelings on the type of person that Jamie is to me and my feelings on how things can change for Jamie when he is released.

Jamie has always put family first and made sure they are a priority. This is seen in many aspects of his life. I want you to know that Jamie has 2 nieces and 1 nephew. Cameron, she is 10 years old and is in the fourth grade. Leah, she is 6 and is in kindergarten. James 3rd, he is almost 20 months old.

As my children have grown up with their Uncle Jamie being prominent in their lives, he has been at every birthday and every holiday. When Jamie is around his nieces, he lights up, he picks them up and hugs them, even if it has only been a day since he seen them.

For the delivery of each of my daughters, Jamie was there waiting to see them as soon as they were born. He sat with our family and waited, sometimes hours, so that he was there to see them. As a mother, as a sister in law and as a friend- this meant the world to me and showed me his true character. Actions like this shows who he is as a person and shows how big his heart really is.

When my daughter Cameron was a baby, Jamie helped me while I was working. I needed a babysitter so that I could go to work. Jamie stayed home with her making bottles, feeding her, playing with her, changing her, and putting her down for naps. He is loving, caring and dependable part of our family. But this is only one small example of when Jamie has been supportive of his family.

I want to express my feeling about Jamie and about when it comes time for his release. I truly believe that with rehabilitation and going through integration, that Jamie will be an upstanding member of society. I do believe that with the support of his family and being around his family, Jamie will be a contributing member of society as well.

Thank you for your time,

Jessica Clemons

Sunday May 23rd, 2021

Your Honor,

On the day of leniency the current case of defendant Jamie Nelson Earl Clemons.

My nephew Jamie Nelson Earl Clemons has always been an ambitious and curious young male child from maturing to Adulthood.  He enjoyed learning, studying and graduated from Chesapeake High School - 4798 Mountain Road, Pasadena, MD 21122

Jamie enjoys the outdoor life of boating, water skiing, swimming, and fishing and winter sports as well.  Jamie likes exercising at all gyms including the YMCA and working several jobs particularly for his brother James Lee Clemons Jr.; who owns, operates and manages his own business along with several family members.

Jamie Nelson Earl Clemons enjoys exercising and being physical healthy.  You would say he is a nutritionist of being physical healthy to himself and others.

Since, Jamie Nelson Earl Clemons has been incarcerated for the past few years my nephew has stayed focus on World News, exercising, reading, keeping in touch with his family and friends.

Jamie's Grandmother Patricia Rosalie Clemons who inspired Jamie as Family was always important no matter what consequences her Grandson Jamie had to face in life of right and wrong decisions.

My nephew Jamie Nelson Earl Clemons is not a threat to society or the environment. He enjoys the Simple One Day at a Time Life of working, staying physical healthy, being an inspirational nutritionist to himself and others, having fun, focusing on World News, meeting people, and staying in contact with family and friends.

Respectfully,

*Aunt Catherine Patricia Castle*

Aunt Catherine Patricia Castle



Licensed and/or Credentialed Consultants in
Psychiatry, Psychology, Substance Abuse, Family Counseling,
and Child/Adolescent Specialties

Yura Jarrells, M.D.
Adolescent & Adult
Psychiatry
(DEA BJ8336845)

John Christie, M.D.
Internal Medicine
(D0050605)

Robert Clark, MA, LCADC
(LC085)
Addictions/Mental Health

Loretta A. Elizalde, MHS,
ABD, CA CAD-AS,
LCPS (Le2240)

Ceris Veblais, Ph.D.
(Clinical Psychologist)

Cheryl Dunston-McLee,
PhD,Med, CADC(LCA256)

Susan Beadle-Lynch
LCSW-C(10202)

Cathy Simmons-Jones,
CACDC

Katherine G. Woods,
LCSW-C (0945)

Nancy Moonstar, PhD, LPC

Susan Knight
Massage Therapist
(M01080)

R Grossman, M.Ed, MA
Mediation - Child Access -
Case Management

Timothy Murnane, Esq.
Corporate Counsel

Robert Horton, Director
B.A., CSC-AD (AC0787)

Robert Clark, MA, LCADC

Loretta M. Elizalde, LCPC

## Completion Certificate

TO:  A.A. County DMV, MD

c.c  attorney of record - David Mabrey  f: 443-702-7709

RE:  Jamie Nelson Earl Clemons (DOB: 12/16/1984)

DATE:  01/06//2017

THERAPIST:  Robert Clark, MA, LADAC

Although there are no clinical indicators of a Substance Abuse issue, but having been accused of a DUI related incident, Jamie attended and participated in 26 (twenty-six) hours of individual therapy sessions addressing drinking and driving as well as the personal issues that led to these accusation.

All random urine screens were negative.

Jamie does not present as a danger to either himself or others.

Based upon Jamie's employment and his need to drive to other jurisdiction we ask that consideration be given towards granting Jamie unsupervised probation if found guilty. Jamie is fully aware of his actions and the need to assure that this never happen again.

*Total number of clinical hours seen: 26.*

*Recommendations:*

1) *At the Court's Discretion attendance at a MADD sponsored IMPACT Meeting and then unsupervised Probation, and.*
2) *Nothing Further.*

*Services meet the requirements of COMAR.*

*Further Information Contact Us at: rgrossman@spjconsultantsinc.com*

Ronald S. Grossman, M.Ed., M.A.