DC DOC Inmates
Correctional Treatment Facility
1901 E. Street S.E.
Washington, DC 20003

April 26, 2021

Honorable Merrick B. Garland
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Re: Serious Human Rights Violations at District of
Columbia Department of Corrections

Dear Attorney General Garland,

We are writing on behalf of the Maryland federal inmates, housed at the District of Columbia, Department of Corrections - DC DOC. On April 20, 2021, the Washington Post released an article reporting the details of how, for 400 days, we have been confined to jail cells for 23 hours a day. We want to inform the U.S. Congress and the Biden Administration that all the facts indicated in the article are true and that the inhumane decisions of Director Quincy L. Booth and the unconstitutional treatment by the jail staff go beyond what the Washington Post describes in its reporting.

The jail's decision to maintain this draconian and unconstitutional mass solitary confinement, while trying to mitigate any negative exposure by labeling the confinement a so called "medical stay-in-place" policy, is arbitrary and ill-conceived. Director Quincy L. Booth's decisions are not the result of appropriate consideration of medical experts who were quoted in the April 2021 Washington Post article. These measures are retaliatory actions by Director Booth and DC jail officials to punish us inmates for filing the class action lawsuit against the jail - Banks v. Booth, 20-849 CKK (D. D.C. 2020).

Director Booth falsely claimed in the April 20, 2021 Washington Post article that the judge's order gave him "basically no wiggle room for us to do anything different." That claim by Booth is categorically not true. As stated by Mr. Steven Marcus (a staff attorney at the D.C. Public Defender Service), in a second article by the Washington Post on April 24, 2021, the Court never sanctioned such unconstitutional measures, as Booth alleges. And another point to why Booth's claim is inaccurate is that, he imposed this confinement at the outset of the pandemic, before any order from the D.C. District Court was imposed. Which means, with no restrictions and all the "wiggle room", he had, he chose and still chooses to enforce the 23 hours a day solitary confinement. Booth's decision is demonstrably unreasonable for the following reasons:

1. If an inmate leaves the facility for in court proceedings, he is placed in quarantine for 14 days upon his return.

2. As recognized by New York's Rikers Island Jail and Virginia's Fairfax County Jail, we inmates do not pose any risk of exposure to each other. We are confined to one particular housing unit at all times. We don't interact with anyone from outside of the jail. The only possible exposure for us is from the correction officers, who are supposed to be on 12-hour shifts. Which means only 2 officers, a day, would be on the unit. But the jail has rotated as many as 6 to 7 officers in a single shift exacerbating the risk of us inmates being exposed to COVID-19. So, if the jail would adhere to its own policy of one correction officer for each 12-hour shift, then the risk of exposure would be very minute and would also be another reason why these 23 hours a day solitary confinement would be unnecessary.

Another point from the second Washington Post article, dated April 24, 2021, is that the City Administrator Kevin Donahue told council members that, "the D.C. District Court has been very prescriptive as to social distancing" and noted that "58 inmates have tested positive for the coronavirus in the past 10 months - evidence that the restrictive policy is working, after hundreds of cases in the early months of the pandemic, before the lockdown began." This claim is deceitful and inaccurate because (1) nowhere in the D.C. District Court ruling is there a reference to a continuous 23 hours a day cell confinement; (2) the confinement was enforced at the outset of the pandemic, when hundreds tested positive because of the jail officials indifference to the danger posed by infectious diseases in general and particularly the Coronavirus and; (3) there was a decrease in new cases, not because of the solitary confinement, but because the jail was forced to comply with the court order to implement surveillance testing and make the wearing of PPE mandatory to all staff and residents. The testing allowed the medical staff to discover who was infected. Prior to the court order the inadequate medical staff was only checking our temperature, although many residents showed other types of COVID-19 symptoms. The temperature checks were not effective because when the test results came back, the jail had to move 4 to 5 people off of the mass quarantine unit to the medical quarantine unit immediately. At least 10 people in total had to be moved from the unit to be quarantined in the medical unit. If the court order had not forced the jail to test us, the situation would have been much more grave. But now testing is not being done at all because the jail has never stopped its enforcement of the 23 hours a day cell confinement. This inhumane confinement alleviates Director Booth's and his staff's necessity to comply with the court ordered alternative measures, which would allow these officials to terminate this continuous confinement.

These 23 hours a day cell confinement violates basic constitutional and human rights. We are pretrial detained citizens who are supposed to be released on bail pending trial. What the jail officials only care about is presenting to the public that they are in "compliance" with the C.D.C guidelines, when in fact; it is all a farce because we inmates have to share communal shower, sinks, toilets, and water fountains. This confinement, without the basic services afforded to those in solitary confinement during normal times, is nothing but a retaliatory act by these jail officials. For example, after a long fight with the jail brass for them to allow us to go outside, after being confined inside for longer than a

year, they finally said we could go outside for recreation. But if we choose to go outside, we will not be allowed to use the phone to call our families or our lawyers, for the entire day. What is the rationale in such an arbitrary decision?

This indefinite confinement, for over 400 straight days, is taking a toll on our mental and physical health. This jail is not equipped medically to treat the psychological needs of us inmates during this confinement. And because we are of the lower wrung of society, it makes it even harder to get the attention of people outside of these walls, for us to receive the appropriate medical care needed. We have observed, from some inmates, suicide, depression, anxiety, heart issues, excessive weight gain and major confrontations between both inmates and correction officers.

Since the pandemic, both inmates from the District of Columbia and the State of Maryland have received relief from Courts from their respective jurisdiction. But we, as federal pretrial detainees from Maryland, under the custody the U.S. Marshall Services, have not been granted the same relief as other inmates. Even though we are being detained by the U.S. District Court of Maryland and being held by the DC DOC, when Judge Kollar-Kotelly of the District Columbia District granted relief for D.C. inmates it did not apply to us. And when Governor Hogan of Maryland granted relief for Maryland inmates it did not apply to us as well. We are being disproportionately and unfairly treated, by not being afforded the same options and/or opportunities for relief as other inmates. So now we submit our grievance to you, the United States Congress and the Biden Administration.

The vast majority of us are pretrial inmates. Some have no criminal record and have been charged for nonviolent offenses. We have been denied our right to be out on bail and also our right to a speedy trial (some of us have been held for an average of two years without a trial). We are being detained in such cruel and unusual conditions, right under the nose of politicians, the Capitol and the White House, and yet we cannot get anyone to hear our pleas for help. It leads us to believe that we are under these conditions and not being granted the same liberties as the insurrectionists because we are Black.

As you may already know, the conditions here at the jail, before the pandemic occurred, were already atrocious violating basic human rights. For example, the jail exposed us, federal detainees, to a Tuberculosis outbreak October 2019 to March 2020. The officials were deliberately indifferent to a detainee's medical needs for months. Which lead to dozens of federal detainees and correction officers being exposed or testing positive for Tuberculosis. The jail failed to adhere to its own policy and the C.D.C guidelines. The jail officials tried to cover up and downplay the TB outbreak. Now we want to put in context the inhumane aspect of these 23 hours a day cell confinement. We are only allowed out of the cell a total of 30 hours in a 30-day period. Which means, in all actuality, we are only out of the cell for approx. one day a month on average? Out of 400 straight days, we were confined to the cell a total of 383 days. In other words, for over 400 days, we have been deprived of sun light, fresh air, dental care, barbers access, law library and hot nutritious meals. Also, visitation has been cancelled since March of 2020.

As a result of these conditions we are subjected to, we respectfully request the following:

- Full indoor unit restrictions lifted to pre-pandemic standards, while the wearing of masks is enforced;
- Daily outside recreation;
- Weekly haircuts nail cuts and law library access;
- Hot, balanced and nutritious meals;
- Increased access to mental health services;
- Allow in-person visits when the majority of inmates and staff have been vaccinated;
- provide access to tablets with video and phone capabilities to allow inmates to communicate with family and friends;
- provide adequate and reliable Wi-Fi service with reception that is able to work inside of all jail cells.

Finally, we respectfully request Congress or the Biden administration to enact a law or an executive order to protect and grant relief to any individuals subjected to the aforesaid extreme conditions of detention and/or unnecessary prolonged solitary confinement, while being detained in a penal institution. Such individual shall receive the relief of **day-for-day credit** toward their sentence for the period of time in which that individual was subjected to such extreme conditions and/or unnecessary prolonged solitary confinement.

In summary, in the United States, we do not lock up our dogs in a cage for 23 hours a day without taking them for an outside walk. But the District of Columbia is doing so with its detainees, for over 400 straight days and counting. These are our concerns and requests. We are writing to you because all of our prior attempts to be heard, through letters and motions to the District Court of Maryland, have fallen on deaf ears. We don't know who else to turn to. We feel you may be our last hope for help and relief.

Will you please give this matter your immediate attention. About 1500 men and women anxiously await your response.

Sincerely,

_____ S _____

Maryland's Federal Inmates at the DC DOC Facilities

1. Jean Remarque
2. Ian Alexander
3. Richard Byrd
4. Darick Knighton
5. Charles Stewart
6. Randy Owens
7. Robert Harris-Howell
8. Bernard Carolina
9. Norman Moore
10. Chaz Chriscoe
11. Mauricio Mendoza
12. Chris Jerry
13. Charles Gray
14. Earl Griffin Jr.
15. Damont Brown
16. Jamie Clemons
17. Dentrell Glover
18. Sean Henson
19. Demetrius Hunter
20. Keith Jackson
21. Joel Mukong
22. Dominic England