---

**DANIEL RASHEEM MCCLENNY, Plaintiff v. OFFICER STEVEN WAYNE MEADOWS, Defendants**
**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA, ROANOKE DIVISION**
2020 U.S. Dist. LEXIS 221977; 113 Fed. R. Evid. Serv. (Callaghan) 2432
Civil Action No. 7:18-CV-221
November 25, 2020, Decided
November 26, 2020, Filed

---

**Editorial Information: Prior History**

McClenny v. Meadows, 2017 U.S. Dist. LEXIS 221308 (W.D. Va., June 27, 2017)

**Counsel** {2020 U.S. Dist. LEXIS 1}Daniel Rasheem McClenny, Plaintiff, Pro se, Independence, VA.

**Judges:** Hon. Michael F. Urbanski, Chief United States District Judge.

Opinion

**Opinion by:** Michael F. Urbanski

Opinion

## MEMORANDUM OPINION

This matter is before the court on defendant Officer Steven Wayne Meadows' ("Officer Meadows") motion in limine to exclude evidence of a subsequent incident of claimed excessive force. ECF No. 40. Plaintiff Daniel Rasheem McClenny opposed the motion. ECF No. 51. The court heard argument on August 14, 2020 and took the motion under advisement, pending production of documents pertaining to the allegations and supplemental briefing on the matter. ECF No. 68. Meadows filed his supplemental brief on November 2, 2020, and attached reports related to the excessive force allegations as exhibits. ECF Nos. 73, 75, and 76. McClenny's supplemental brief was docketed on November 24, 2020. ECF No. 77. The matter is ripe for resolution.

For the reasons set forth below, the court **GRANTS in PART** and **DENIES in PART** Meadows' motion in limine. Balancing the factors under Federal Rules of Evidence 404(b) and 403, the court concludes that McClenny may introduce the evidence concerning the facts of an August 7, 2018 incident concerning inmate Jason Byrns (hereinafter referred to as the{2020 U.S. Dist. LEXIS 2} "Byrns incident"), but may not mention to the jury the subsequent Grayson County indictment and the dismissal thereof.

In sum, the court finds the evidence to be relevant to the issues of intent and whether the injuries sustained by McClenny were accidental. The reliability of this evidence is manifest from the Report of Investigation prepared by Johnny R. Acosta, Master Special Agent, Virginia Department of Corrections. As the court will give appropriate limiting instructions explaining the narrow purpose for which this evidence may be considered, the court does not find that its probative value is substantially outweighed by any unfair prejudice or confusion of the issues. See United States v. Cowden, 882 F.3d 464 (4th Cir. 2018). However, the court will not permit mention of the indictment

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.



filed following the Byrns incident as the court finds the fact of a prosecution which was later dismissed not to be probative of any issue in this case.

I.

**McClenny** brought suit under 42 U.S.C. § 1983, complaining of an incident that occurred at River North Correctional Center ("RNCC"). He claims that on January 4, 2018, Officer **Meadows** violated his Eighth Amendment rights by using excessive force in restraining in him following a fight between inmates in a prison pod. ECF No. 1,{2020 U.S. Dist. LEXIS 3} at 3. **McClenny** claims he suffered two fractures and severe angulation of his fingers due to the excessive force. Id. For his part, Officer **Meadows** claims he applied the authorized key lock restraint technique without using excessive force and denies breaking any fingers in the process. ECF No. 20, at 4. **McClenny** filed this lawsuit on May 17, 2018. ECF No. 1.

On February 10, 2020, Officer **Meadows** filed the motion in limine at issue, seeking to exclude at trial excessive force allegations subsequently made against him. **Meadows** Mot. in Limine, ECF No. 40. Specifically, Officer **Meadows** seeks to exclude an alleged instance of excessive force that occurred on August 7, 2018, approximately eight (8) months after the incident at suit. In the August 7, 2018, incident, Officer **Meadows** was accused of using excessive force on a different inmate, Jason Byrns, resulting in injuries to Byrns' shoulder. On July 26, 2019, Officer **Meadows** was indicted in the Circuit Court of Grayson County for malicious wounding in violation of Virginia Code § 18.2-51. On January 24, 2020, the indictment was dismissed by order of nolle prosequi. Mem. in Support of Mot. in Limine, ECF No. 41, at 2. Officer **Meadows** argues that this evidence{2020 U.S. Dist. LEXIS 4} should be excluded under Federal Rules of Evidence ("FRE") Rules 401 and 4021 as irrelevant because the circumstances were dissimilar, Rule 404(b)2 as improper character evidence, and Rule 4033 as unduly prejudicial because the allegations are unreliable. Id., at 1. **McClenny** opposed the motion, arguing that the allegations are admissible as probative of Officer **Meadows**' intent and lack of accident.

The court heard argument on Officer **Meadows**' motion in limine on August 14, 2020 and issued a Memorandum Opinion on September 25, 2020. In its opinion, the court noted that "[c]redible evidence that a correctional officer exceeded the bounds of permissible force against an inmate a second time is relevant to an excessive force claim, regardless of the specific restraint technique used or injuries sustained." Mem. Op., ECF No. 67, at 4. Further, the court found that **McClenny** did not seek to introduce the allegations for the purpose of attacking Officer **Meadows**' character. Id. at 5. If substantiated, the allegations would{2020 U.S. Dist. LEXIS 5} be probative evidence of intent and lack of accident. However, the court noted that "[w]hile the allegations may be admissible even if the prosecution was dismissed and Officer **Meadows** was not convicted, the court cannot admit the vague allegation without additional documentation supporting its veracity" under FRE Rule 403. Id. at 6. In its order and opinion, the court indicated it would rule on the motion in limine once written documentation concerning the Byrns incident was produced and evaluated. The court directed the parties to file supplemental briefs following review of reports regarding the Byrns incident. ECF No. 68.

Officer **Meadows** filed his supplemental brief on November 3, arguing that the documents related to the allegations support his motion to exclude the evidence. ECF No. 73. Specifically, he claims that "[p]laintiff should still not be permitted to admit evidence of this subsequent allegation of excessive force because the allegation is unreliable, not credible, and not proven." He contends that "[n]othing in the report or any other document demonstrates that **Meadows** actually engaged in the conduct for which he was accused." Moreover, Officer **Meadows** argued that the bulk of the allegations{2020 U.S. Dist. LEXIS 6} and the primary focus of the ensuing investigation focused on the conduct of

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.



Sergeant Michael Duane Dean ("Sergeant Dean"), the other correctional officer involved in the incident. Therefore, Officer **Meadows** argues, even if the allegations were reliable, their probative value is substantially outweighed by the risk of unfair prejudice to him.

**McClenny** argues that the Byrns incident is relevant to **Meadows**' intent and lack of accident regarding the injuries suffered by **McClenny**. **McClenny** notes similarity in the two episodes, each involving injuries to restrained inmates, and their close proximity in time.

II.

The court finds a review of the documents related to the subsequent allegations of excessive force instructive. In response to the court's order following the August 14, 2020 hearing, **Meadows** produced a report prepared by Johnny R. Acosta, a Virginia Department of Corrections Master Special Agent ("Agent Acosta"), who investigated the allegations that Sergeant Dean and Officer **Meadows** used excessive force on inmate Byrns at RNCC on August 7, 2018. ECF No. 76, at 2.

The series of events was instigated by a rumor that Byrns had threatened to harm a female member of the Medical Department{2020 U.S. Dist. LEXIS 7} at RNCC. Id. at 3. Corrections Lieutenant King P. King ("Lieutenant King") allegedly directed Sergeant Dean to escort Byrns to the Restrictive Housing Unit ("RHU") pending further investigation into the matter. Id. Officer **Meadows** accompanied Sergeant Burns.

Upon arriving at Byrns' cell, Sergeant Dean did not request that Bryns step out of the cell into the view of the surveillance cameras, as required by protocol, but instead entered the cell and ordered Byrns' cellmate to leave. Id. When asked why he did not follow protocol in entering the cell to restrain Byrns, Sergeant Dean stated he "had established rapport with Byrns" and "did not believe that there would be any problems." Id.

In response to inquiries by Agent Acosta, Byrns and the correctional officers offered strikingly differing accounts of the ensuing events. Sergeant Dean claimed that as soon as his cellmate left, Byrns struck him on the left part of his chest with an open hand. Id. at 6. Sergeant Dean states that he attempted to take Byrns to the floor using a "Tinkle Technique," but that instead Byrns fell backwards into the corner of the cell. Id. He states that Byrns fell to the floor and was rolling around to resist restraint when Sergeant{2020 U.S. Dist. LEXIS 8} Dean called for back up from Officer **Meadows**, who then entered the cell to help restrain Burns. Id. Sergeant Deans stated that Officer Lundy assisted by restraining Byrns' legs.

Officer **Meadows** claims that upon entering the cell, Sergeant Dean asked Byrns to turn around so that he could be handcuffed. After Sergeant Dean told Byrns that he was being escorted to segregation, Byrns assaulted Sergeant Dean. As a result of Bryns' assault, Officer **Meadows** stated that "they needed to take Byrns to the ground so no one got hurt." Id.

In contrast to the accounts of Sergeant Dean and Officer **Meadows**, Byrns claims that after he acceded to the officers' request to turn around, his head was slammed into the back corner of his cell, resulting in injury. Id. at 3. Byrns claims that both Sergeant Dean and Officer **Meadows** "got on top of him and started punching him...in the back of the head and ribs." Id. He states that during the assault, they made a remark about the alleged threat Byrns made to a female member of the medical staff. Id. Both officers deny ever punching, kicking, or using any other unnecessary force against Byrns. Id. at 7, 9. Officer Lundy, the only other officer in the vicinity for the beginning of{2020 U.S. Dist. LEXIS 9} the incident, told Agent Acosta that he did not see the actual altercation as he was outside the cell watching the cellmate. Id. at 12-13.

After Sergeant Dean and Officer **Meadows** restrained Byrns with handcuffs and leg irons, they

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.



escorted him out of the cell to the RHU using the key lock technique. Id. at 6. They both claim that Byrns resisted the escort, straightening his legs stiffly and pushing backwards against the officers to hinder walking, which prompted Lieutenant King to urge Byrns to calm down. Id. at 6, 8. They claim that Byrns continued resisting the escort, which forced them to place Byrns on the ground "for his safety and the safety of other staff." Id. at 6, 8.

Byrns denies intentionally resisting the escort, claiming that while he was walking his pants fell to his ankles, which prevented movement and provoked Sergeant Dean and Officer **Meadows** to push him to the ground and grab his throat. Id. at 4. Byrns alleges the rough takedown caused three fractures, one requiring surgery. Id. at 4, 7. Officers Glenn and Lundy recall Byrns resisting the escort before the takedown. Id. at 13-14.

After the takedown, Lieutenant King directed Sergeant Dean and Officer **Meadows** to seek medical attention, and recalled visible scratches on both of their hands.{2020 U.S. Dist. LEXIS 10} Id. at 8, 11. Other officers escorted Byrns to RHU, where he was photographed by Corrections Lieutenant Jason C. Higgins ("Lieutenant Higgins"). Id. at 4. Agent Acosta noted that these photos show "red marks about Byrns' face and head and right shoulder" but that there were no photos of Byrns without his shirt to capture the alleged injuries to his chest and arms. Id.

On August 13, 2018, a few days after the incident, Corrections Lieutenant Jamin B. Robinson ("Lieutenant Robinson") photographed Byrns without his shirt. Id. at 17. He claims Byrns requested photos be taken because his body displayed severe bruising. Id. Lieutenant Robinson told Agent Acosta that the photos did in fact show "very heavy bruising" to Byrns' chest and shoulder. These photographs are missing, and efforts to locate them have been unsuccessful. Id. at 4.

Agent Acosta took photographs of Byrns during his interview on August 16, 2018, which his report states show bruising to Byrns' neck, chest, shoulders, feet, toes, and right ankle. Id. Agent Acosta's report indicates that the photographs also show abrasions to the top and back of Byrns' head and wrists. Id.

Upon questioning, Sergeant Dean attributed Byrns' multitude of injuries to his "rolling around{2020 U.S. Dist. LEXIS 11} on the floor or when he was taken to the ground on the outside walkway." Id. at 7. Sergeant Dean reported to Agent Acosta that he believed Byrns' shoulder fracture occurred during the takedown on the walkway to the RHU. Id. He pointed out that he was on Byrns' right side, but that Officer **Meadows** was on Byrns' left side, the side that was fractured. Id. Officer **Meadows** claims he is not aware of any injury to Byrns' shoulder and did not hear Byrns complain of pain. Id. at 9.

Agent Acosta's report describes photographs taken by the Medical Department depicting a wound on Sergeant Dean's middle fist knuckle on his right hand and elbow. The photographs also show a red mark on Sergeant Dean's chest, which he attributes to the alleged first blow Byrns made in the cell. Id. at 3.

III.

Officer **Meadows** argues that the report demonstrates that the allegations of excessive force in the Byrns incident are unreliable and that his involvement in the incident was merely tangential. The court disagrees, finding the detailed investigative report by Agent Acosta assures adequate reliability, that **Meadows** was directly involved in the takedown as to which Byrns claimed injury, and that the two episodes are sufficiently similar{2020 U.S. Dist. LEXIS 12} and close in time to be relevant to issues of intent and lack of accident.

The court finds that the allegations do not constitute impermissible character evidence. Under Rule 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.



person in order to show action in conformity therewith." Fed. R. Evid. 404(b). Such evidence, however, may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id. Furthermore, "to be admissible under Rule 404(b), evidence must be (1) relevant to an issue other than character; (2) necessary; and (3) reliable." United States v. Siegel, 536 F.3d 306, 317 (4th Cir. 2008), cert. denied, 555 U.S. 1087, 129 S. Ct. 770, 172 L. Ed. 2d 760 (2008) (internal quotation marks omitted). Rule 404(b) is "an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition." United States v. Young, 248 F.3d 260, 271-72 (4th Cir. 2001) (internal quotation marks omitted). And, "[a]s a rule of inclusion, the rule's list is not exhaustive." United States v. Queen, 132 F.3d 991, 994-95 (4th Cir. 1997).

The court finds that the allegations implicate Officer **Meadows** in the intentional use of excessive force against an inmate. If believed by the jury, the evidence could support a showing of intent in Officer **Meadows**' alleged use of force against **McClenny** and lack{2020 U.S. Dist. LEXIS 13} of accident. As such, this evidence does not run afoul of the prohibition of character evidence in Rule 404(b). In Kopf v. Skyrm, 993 F.2d 374, 380 (4th Cir. 1993), the Fourth Circuit reversed and remanded an excessive force case in part because of the district court's failure to admit a prior incident under Rule 404(b), holding that "[b]oth intent and lack of mistake are proper purposes for admission of prior acts under Rule 404(b)." Id. at 381. Likewise, in Thorne v. Wise, 47 F.3d 1165 (table), [published in full-text format at 1995 U.S. App. LEXIS 2844] 1995 WL 56652, *3 (4th Cir. Feb. 3, 1995), the court held:

> We have characterized Rule 404(b) as "an 'inclusionary rule,' which permits the introduction of all relevant acts except those that prove *only* character." Kopf, 993 F.2d at 380. In this case, the Troopers suggested that Thorne's injuries were accidental. The fact that the Troopers have a history of inflicting pain and punishment upon arrestees was unquestionably helpful to the jury in assisting it in determining whether Thorne's injuries were in fact accidental, as the Trooper's suggested. Because the evidence was not admitted to prove only character we hold that, in this case, it was admissible under Rule 404(b).

However, the court recognizes that the allegations did not lead to a conviction, disciplinary action, or other form of conclusion that Sergeant Dean and Officer **Meadows** were guilty of impermissible behavior. Therefore, the{2020 U.S. Dist. LEXIS 14} court must evaluate the reliability of the evidence. Evidence is reliable unless "it could not be believed by a rational and properly instructed juror." United States v. Aramony, 88 F.3d 1369, 1378 (4th Cir. 1996) (citation and internal quotation marks omitted). Evidence of prior bad acts is reliable if a jury could reasonably find, by a preponderance of the evidence, that the act was committed by the defendant. Huddleston v. United States, 485 U.S. 681, 690, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988); United States v. Hadaway, 681 F.2d 214, 218 (4th Cir. 1982). In assessing this "minimal standard of proof," the court must consider all potential evidence, as "the sum of an evidentiary presentation may well be greater than its constituent parts." United States v. Mussmacher, No. 09-cr-0169, 2010 U.S. Dist. LEXIS 55011, 2010 WL 2292214, at *5 (D. Md. June 3, 2010) (quoting Huddleston, 485 U.S. at 690).

The court finds the allegations plainly meet the evidentiary standard for reliability, particularly given the detailed investigation conducted by Agent Acosta. The court recognizes that evidence as to the Byrns' episode will have to be proscribed so that it does not predominate over the claim of excessive force by **McClenny** to be decided by the jury. United States v. Cowden, No. 5:16CR24, 2016 U.S. Dist. LEXIS 137501, 2016 WL 5794763, at *1 (N.D.W. Va. Oct. 4, 2016), aff'd, 882 F.3d 464 (4th Cir. 2018) (holding disputed allegations admissible despite the slight risk of a "'mini-trial' within the trial" because they are supported by direct testimony). As noted, the court will provide appropriate{2020 U.S. Dist. LEXIS 15} limiting instructions explaining the narrow purpose for the admission of

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.



evidence regarding the Byrns' incident.

Officer **Meadows** argues that even if the allegations are found reliable, their admission is barred because the facts are sufficiently dissimilar. "The more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes." Queen, 132 F.3d at 997; see also Helsabeck v. Fabyanic, 173 F. App'x 251, 257 (4th Cir. 2006) (per curiam) (upholding the district court's exclusion of 404(b) evidence in an excessive force case where the facts were not sufficiently similar). Specific act evidence must also pass muster under FRE 403, which considers, among other things, whether the alleged prior act is too remote in time. Kelly, 510 F.3d at 437. In both the Byrns and **McClenny** incidents, Officer **Meadows** was called upon to restrain an inmate and employed the key lock restraint technique. In each case, the inmates claim to have been injured during the restraint process. These incidents occurred approximately eight months apart. The court finds them sufficiently similar in time and substance to be admissible.

Finally, Officer **Meadows** seeks exclusion of the allegation on the basis that his involvement in the Byrns incident was minimal, and{2020 U.S. Dist. LEXIS 16} so the prejudicial effect of involvement in the incident far outweighs any probative value. "Rule 403 provides a more limited bar to otherwise admissible evidence." United States v. Basham, 561 F.3d 302, 326 (4th Cir. 2009). Under this rule, "damage to a defendant's case is not a basis for excluding probative evidence," because "[e]vidence that is highly probative invariably will be prejudicial to the defense." United States v. Grimmond, 137 F.3d 823, 833 (4th Cir. 1998). Rule 403 "only requires suppression of evidence that results in unfair prejudice-prejudice that damages an opponent for reasons other than its probative value, for instance, an appeal to emotion, and only when that unfair prejudice substantially outweighs the probative value of the evidence." United States v. Mohr, 318 F.3d 613, 619-20 (4th Cir. 2003) (internal quotation marks omitted). Unfair prejudice "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." Old Chief v. United States, 519 U.S. 172, 180, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997).

The court finds that the basis for potential prejudice from the introduction of evidence of the Byrns incident directly stems from its value as probative evidence. "[A]lthough the 'bad act' evidence unquestionably was prejudicial to [defendant], this evidence also provided significant information about [defendant]'s actions when dealing{2020 U.S. Dist. LEXIS 17} with individuals he perceived as manifesting resistance to law enforcement authority." Cowden, 882 F.3d at 473. Although Officer **Meadows** served in a supporting role to Sergeant Dean, the allegations specifically identify him as involved in the assault on Byrns in his cell and the forceful takedown of Byrns in the walkway. In restraining both Byrns and **McClenny**, Officer **Meadows** employed the key lock restraint technique, and in each case, the inmate claims that the force used to implement the restraint was excessive, resulting in injury.

In sum, and applying the four-factor test for admission of prior "bad act" evidence noted in Cowden, 882 F.3d at 472, the court concludes that the evidence at to the Byrns incident (1) is relevant given the similarity of the Byrns and **McClenny** events and their close proximity in time; (2) is probative as to the issues of intent and lack of accident and is not offered to establish the general character of the defendant; (3) is reliable as evident from Agent Acosta's investigative report; and (4) its probative value is not substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process. Again, the court will provide appropriate{2020 U.S. Dist. LEXIS 18} limiting instructions.

Accordingly, the court **DENIES in PART** Officer **Meadows**' motion in limine, ECF No. 40, finding the Byrns incident to be thoroughly investigated and sufficiently reliable. Officer **Meadows** was directly

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.



involved in restraining inmates in each incident using the same key lock technique, resulting in claimed injuries. The incidents are close enough in time and character to be probative as to intent and lack of accident. As such, facts surrounding Officer **Meadows**' involvement in the Byrn incident may be admitted for these narrow purposes with appropriate limiting instructions. However, Officer **Meadows**' motion is **GRANTED in PART**, as **McClenny** may not mention to the jury or introduce evidence that **Meadows** was charged with a crime, which was later dismissed, arising out of the Byrns incident.

An appropriate Order will be entered.

Entered: November 25, 2020

/s/ Michael F. Urbanski

Michael F. Urbanski

Chief United States District Judge

## ORDER

In this civil rights case alleging excessive force by a correctional officer, defendant Officer Steven **Meadows** has filed a motion in limine to exclude evidence of a subsequent incident of claimed excessive force. ECF No. 40.

For the reasons set{2020 U.S. Dist. LEXIS 19} forth in the accompanying memorandum opinion, the court **GRANTS in PART** and **DENIES in PART Meadows**' motion in limine. Balancing the factors under Federal Rules of Evidence 404(b) and 403, the court concludes that plaintiff Daniel **McClenny** may introduce the evidence concerning the facts of an August 7, 2018 incident concerning another inmate, but may not mention to the jury the subsequent Grayson County indictment and the dismissal thereof.

It is so **ORDERED**.

Entered: November 25, 2020

/s/ Michael F. Urbanski

Michael F. Urbanski

Chief United States District Judge

## Footnotes

1

Fed. R. Evid. 401: Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.

Fed. R. Evid. 402: Irrelevant evidence is not admissible.

2

Fed. R. Evid. 404(b): (b) Crimes, Wrongs, or Other Acts

(1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.



character.

(2) Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:

(A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and

(B) do so before trial - or during trial if the court, for good cause, excuses lack of pretrial notice.
3

Fed. R. Evid. 403: The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.


